COMMONWEALTH *vs.* HOWARD R. GORDON.

Worcester.    September 23, 1940. — October 31, 1940.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Homicide. Evidence,* Admissions and confessions, Privileged communication. *Practice, Criminal,* Confession; Exceptions: whether error harmful. *Error,* Whether harmful.

The admission of a hammer in evidence and the taking of it into the jury room at a trial for murder by beating did not harm the defendant because the Commonwealth did not contend that he had used it on the deceased and the judge instructed the jury that there was no evidence that he had so used it.

A confession by the defendant in a criminal case is presumed to have been voluntary in the absence of any evidence that it was not.

Statements, relating solely to the circumstances of the alleged crime, made by the defendant in a criminal case to physicians while under examination at an insane hospital, were not privileged and could be introduced in evidence at the trial.

At a trial for murder in the second degree, a ruling that no more than manslaughter could be found by the jury could not properly have been given on evidence that the defendant, while his wife was asleep in bed, jumped on her face with his shoes, so injuring her that she died.

INDICTMENT, found and returned on October 17, 1939.

The case was tried in the Superior Court before *Burns,* J. The statements which were the subject of the eleventh and twelfth assignments of error related only to the con-

duct of the deceased and the defendant at the time of the alleged crime. The defendant contended that the statements were privileged.

*E. A. Ryan,* for the defendant.

*A. B. Cenedella,* Assistant District Attorney, for the Commonwealth.

LUMMUS, J. This is an indictment charging that the defendant on the tenth day of October, 1939, at Worcester, did assault and beat his wife "Aurore Gordon with intent to murder her by striking and kicking her, and by such assault and beating did murder said Aurore Gordon." The crime was alleged to be murder in the second degree. After a verdict of guilty of murder in the second degree, the case comes before us on appeal, with a summary of the record, a transcript of the evidence, and an assignment of errors, under G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

There was evidence that the defendant came to the police station and told police officers that he had killed his wife. Returning with him to the house, the officers found in the bed the dead body of the defendant's wife, with her nose fractured, wounds on her face, her skull fractured, and her brain exposed. A signed confession given by the defendant to police officers stated that after going to bed on the night of October 9, 1939, the defendant got up soon after midnight, feeling ill and with a "twisted" mind, put on his shoes, and went into another room. Returning to bed, where his wife was lying asleep, he struck her in the face with his fist and then jumped on her face with his shoes. He testified that on the evening before he and his wife had quarrelled about his buying an automobile instead of paying the milk bill. No cause of death was found except the injuries to her head, and those could have been caused by jumping on her face with shoes and were adequate to cause death.

The defence made two points, not wholly consistent with each other. The first was that on his return from the other room the defendant was in such distress that he got into bed with his feet near his wife's head and kicked about in pain. When he waked up he found his feet and shoes in

his wife's face, and discovered that she was dead. In other words, he contended that her death was accidental. The second defence was insanity. The defendant offered the testimony of two alienists who admitted that the defendant was not insane before or since the occurrence in the early morning of October 10, 1939, but expressed the opinion, based solely upon the defendant's testimony as to that occurrence, that the defendant was insane at the time. They did not distinguish in their testimony between the lack of mental capacity that excuses a defendant from legal responsibility for crime, and the broader conception of insanity that medical men may entertain but that has no legal consequence in criminal cases. *Commonwealth* v. *Clark*, 292 Mass. 409, 413–414.

The errors assigned are numerous, but none of them requires extended discussion. We refer to them by their numbers.

1. The hypothetical question to a general practitioner of medicine called for an expert opinion, and was properly excluded on the ground that the witness was not qualified as an expert. 2. 3. 4. 7. 10. 13. 16. These alleged errors are based upon the admission in evidence of a hammer found in the house. This did the defendant no harm, for the prosecution did not contend that the defendant used the hammer upon his wife, and the judge in his charge instructed the jury that there was no evidence that the hammer or any weapon was used, other than the shoes on the defendant's feet. Even though the hammer got into the jury room it was obviously of no importance. 5. 6. There was no valid ground of objection to the written confession. The confession was presumed to be voluntary (*Commonwealth* v. *Clark*, 292 Mass. 409, 411) and there was no evidence, admitted or offered, that it was not. 9. The question to a police officer, asking whether he agreed with the opinion as to the mental condition of the defendant expressed by an alienist in a report not in evidence, was properly excluded, for a number of reasons. 11. There was no error in permitting the district attorney to interrogate the defendant about statements made by him while under

examination at an insane hospital, even though a physician at the hospital furnished the district attorney with the information upon which the questions were based, and the physician was called as a witness by the defendant. 12. The district attorney had a right to examine the same physician concerning statements made by the defendant at the hospital that contradicted his testimony. There was no privilege. Wigmore, Evidence (3d ed.) §§ 2380–2380a. 14. It could not be ruled that the evidence did not warrant a verdict of more than manslaughter. The jury could find that the force used was such as to create a plain and strong likelihood that the victim would die as a result. *Commonwealth* v. *Pierce*, 138 Mass. 165, 178. *Commonwealth* v. *Chance*, 174 Mass. 245, 252. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 309, 315. *Commonwealth* v. *Fox*, 7 Gray, 585. 15. This assignment of error contains nothing not contained in other assignments. 17. The defendant complains that the report of the superintendent of an insane hospital, employed under G. L. (Ter. Ed.) c. 123, § 100, to examine the defendant, was not called to the attention of the defendant, though it expressed the opinion that the defendant "was insane at the time of the crime." See also § 100A. It does not appear that the defendant was ever refused access to the report. Furthermore, the defendant introduced the testimony of the superintendent and of another alienist to precisely the same effect. We find no error in the case.

*Judgment affirmed.*