COMMONWEALTH *vs.* JOSEPH BROOKS.

Norfolk.   February 3, 1941. — February 25, 1941.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Homicide.   Words,* "Deliberately."

A verdict of guilty of murder in the first degree was warranted by evidence that the defendant, when arrested by two police officers with companions and placed in an automobile, retained possession of a revolver which he had been carrying; that later, when one of the officers was back of the automobile and the other was getting out of it, the defendant jumped up from his seat, called on the second officer to drop a revolver which he had in his hand, held back his companions, folded back the front seat and leaning over it, fired twice at that officer, killing him, the second shot hitting him as he was falling; and that the defendant later stated that he "would have shot" the first officer "too."

INDICTMENT, found and returned on May 27, 1940.

The case was tried in the Superior Court before *Dowd*, J.

*J. D. Smith*, for the defendant.

*G. W. Arbuckle*, Assistant District Attorney, for the Commonwealth.

QUA, J.   The defendant has been convicted of the murder in the first degree of Edward F. Lee, a police officer of Milton, on May 16, 1940. Sentence of death has been imposed, and execution of the sentence has been stayed in accordance with G. L. (Ter. Ed.) c. 279, § 4, as amended by St. 1935, c. 437, § 3, and the record on appeal has been transmitted to us in accordance with G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341. We have not been asked to order a new trial upon any of the grounds upon which we are specifically authorized to do so by the 1939 amendment, and upon consideration of the whole case we are satisfied that justice does not require the exercise

of the additional powers conferred upon us by that amendment. We have considered all questions of law fairly raised. The only question argued by the defendant upon his assignments of error and the only question upon which he seeks our decision is whether there was any evidence that the murder was committed with the "deliberately premeditated malice aforethought" which will support a conviction in the first degree under G. L. (Ter. Ed.) c. 265, § 1.

There was ample evidence upon which the jury could find these facts: Late in the evening of May 15 the defendant and one Papineau obtained possession of an automobile, one Zukauskis joined them, and all three began riding about in the automobile. The defendant was carrying a revolver. He announced to his companions that he was going to make "a couple of hundred dollars" that night robbing gasoline stations, "or know the reason why." Between one o'clock and two o'clock on the morning of the sixteenth the three men were arrested by officers Slack and Lee for stealing the automobile. The officers "frisked" the three men, but for some reason failed to find the defendant's revolver. The prisoners were then placed in the rear seat of a police "prowl car." The defendant sat in the middle. Papineau and Zukauskis sat at the ends. Officer Slack drove, while officer Lee sat at his right on the front seat with his body turned to the left, so that he was able to cover the prisoners with his revolver. Upon arrival in front of the Milton police station Officer Slack got out of the car on its left side and started to go around the back of it. At the same time Officer Lee opened the door on his side and backed out of the car to the sidewalk. At that moment the defendant jumped up from the rear seat, pushed or held back the two other prisoners, folded forward the right half of the front seat, and leaning over it, shot Officer Lee twice, and was then himself shot and wounded by Officer Slack, firing in through a window of the car. Before the defendant fired he shouted to Officer Lee, "Drop that gun, you son of a bitch."

From the nature of the wounds in Lee's body and from

other evidence it could have been inferred that one of the defendant's shots was directed almost horizontally, but that the other was directed downward when Lee was "bent over, or fallen, or was slumped to the ground." Each wound was sufficient to cause death. There was testimony that two or three seconds elapsed between the defendant's two shots. Later at the hospital the defendant said, "I shot the officer. I shot the cop. I am responsible for everything. It is all my fault." He also said, "I would have shot the other guy too, but he shot too fast. What did he have, a cannon?" To fire the defendant's revolver, using it as a "double action," required a pull on the trigger of fifteen and one half pounds, and using it as a "single action" required a pull of nine pounds.

It has long been settled that the word "deliberately" in the expression "deliberately premeditated malice aforethought" as used in our statute does not mean slowly. It has reference to the purposeful character of the premeditated malice rather than to the time spent in premeditation. After the exhaustive discussion of this statutory phrase in *Commonwealth* v. *Tucker*, 189 Mass. 457, at pages 486–496, it would be superfluous to attempt further definition. We merely quote the summary of the court's conclusions as expressed by the court itself on pages 494 and 495 of that case: "In substance . . . while it must be shown that a plan to murder was formed after the matter had been made a subject of deliberation and reflection, yet in view of the quickness with which the mind may act, the law cannot set any limit to the time. It may be a matter of days, hours, or even seconds. It is not so much a matter of time as of logical sequence. First the deliberation and premeditation, then the resolution to kill, and lastly the killing in pursuance of the resolution; and all this may occur in a few seconds."

In the case at bar the jury could find from the conduct and admissions of the defendant, that although he knew he was under arrest he concealed, or at least failed to reveal, the fact that he still controlled a deadly weapon; that he waited until a favorable opportunity when Officer Lee was

getting out of the automobile and Officer Slack was going around it on the other side; that he then performed a series of acts — jumping up, pushing the other prisoners back out of the way, tipping the front seat forward and leaning over it, demanding that Officer Lee drop his revolver, and then twice aiming his own revolver and exerting the pressure upon the trigger necessary to discharge it — and that all these acts were done in pursuance of a predetermined purpose to escape by killing the officers. This was enough to justify a verdict of guilty in the first degree. *Commonwealth* v. *Vandenhecke,* 248 Mass. 403, 405, 406. *Commonwealth* v. *Bartolini,* 299 Mass. 503, 515–516.

*Judgment affirmed.*