COMMONWEALTH *vs.* SALVATORE VENUTI.

Suffolk.    December 6, 1943. — December 27, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Homicide. Conspiracy. Practice, Criminal,* Discretionary control of
    evidence, Charge to jury, New trial. *Evidence,* Photograph, Pre-
    sumptions and burden of proof.

Evidence, that one of four defendants indicted for murder, in pursuance
    of a common felonious design prearranged by the four, entered a tene-
    ment; that, while there, the defendant, in carrying out that design,
    added to the force of numbers by his presence and guarded the door
    and another of the four committed a homicide in his presence; that
    he later assisted the others in disposing of the body of the victim and
    effacing evidences of the crime; and that he then became a fugitive
    from justice, warranted a verdict of guilty of murder in the second
    degree: the original felonious design supplied the malice aforethought
    necessary to conviction.
Exclusion, at the trial of an indictment charging murder, of questions,
    asked in cross-examination of a medical examiner testifying for the
    Commonwealth, as to what was his purpose in the performance of
    certain of his duties, where any answer he might have given would
    not have been helpful to the jury, was not an improper exercise of
    discretion by the trial judge.
In the circumstances, photographs of the mouth of the victim of a homi-
    cide were competent at the trial of an indictment for his murder.
An exception, merely to the "limited suggestion on the presumption of
    innocence" in an instruction at the beginning of a charge to the jury
    trying an indictment for murder, that "the law presumes . . . [the
    defendant] to be innocent until his guilt is proved beyond a reasonable
    doubt," was overruled where full and accurate instructions were given
    as to the burden of proof and reasonable doubt and the jury were told
    that, although they could draw inferences, they could not decide upon
    guesswork and conjecture.
No error appeared, at the trial of an indictment for murder, in the trial
    judge's reading to the jury excerpts from the evidence or in his refer-
    ences to the evidence in his charge.
It was proper for a judge presiding at the trial of an indictment for murder
    to recall the jury and give further instructions in the absence of counsel
    for the defendant.
There was no abuse of discretion and no error in the denial of a motion
    for a new trial of an indictment for murder based on contentions that
    were or might have been raised at the trial.

INDICTMENT for murder, found and returned on December 9, 1941.

The case was tried before *Donahue,* J.

*J. M. Boyle,* for the defendant.

*F. T. Doyle,* Assistant District Attorney, (*John J. Sullivan,* Assistant District Attorney with him,) for the Commonwealth.

QUA, J. The defendant Venuti has been convicted and sentenced for the murder in the second degree of Antonio Pomo on November 15, 1941. Venuti was indicted jointly with one Semenza, one Cortese, and one De Marco; but Cortese was not apprehended, Semenza and De Marco pleaded guilty to manslaughter, and Venuti, hereinafter called the defendant, was tried alone.

The evidence most favorable to the Commonwealth, as developed at the trial, was substantially this: The four original defendants were friends or acquaintances and were accustomed to meet each other in and about a café on Hanover Street in Boston. In the evening of November 15 they met at the café and conversed and drank there. As they were leaving the café, Cortese said to the defendant, "Come on, Zip, what are you afraid of?" The four then walked to a tenement occupied by one Penta on Henchman Street. Penta and the murdered Pomo were very close friends, and the defendant knew them both. Both were in the tenement at the time. When the door was opened in response to a knock, Cortese, De Marco, Semenza, and the defendant entered. "They" said, "All right, stand back," and pushed Penta and Pomo back toward a table. De Marco said to Penta, "How much money have you got?" The defendant closed and locked the door and stayed near it. De Marco slapped Penta and "grabbed" $30 out of his pocket. Without saying anything, Cortese shot Pomo four times with a revolver handed to him then and there by Semenza. Pomo said, "You got me." Cortese also threatened Penta with the revolver. "They," apparently meaning Cortese, De Marco, Semenza and the defendant, said, "Come on," and all went out, including Penta. They walked about the streets for some minutes, and Cortese disappeared. There was

evidence, which the jury might or might not have believed, that, on the street, De Marco returned $10 of the $30 to Penta, and also that he returned the whole of it. At one time, while on the street, the defendant, as he himself testified, found himself alone in front of a barber shop and had "an opportunity to leave." But the defendant, as well as De Marco, Semenza and Penta, returned to the tenement. De Marco said, "I wonder if he is dead," and then stabbed Pomo, who was lying on the floor, many times with a knife about the head and neck and through the heart. Death was caused by bullet wounds and other injuries, but "while the man was alive, there was stabbing." Semenza wrapped the body in sheets and a blanket. Semenza, De Marco, the defendant, and Penta carried it to a nearby wharf and threw it in the water of the harbor. The defendant helped to carry the body. All four then again returned to Penta's tenement and cleaned up the blood. The defendant assisted in the cleaning. After the murder the defendant did not return to his home and could not be found in his usual haunts. When, later, he gave himself up and was asked by the police whether he had seen Pomo since he (the defendant) had been "out of Concord," he answered, "Not that I can say," and when asked whether he had seen Pomo in restaurants, he answered, "I seen him just Hello, that is all."

The foregoing narrative of the killing finds ample support in the evidence, although there was much conflict as to further details which need not be recited here, including a conflict as to whether Cortese and Pomo exchanged vile epithets immediately before the shooting. The defendant's testimony in his own behalf was contradictory at several points and could not all have been true. Most of the more important evidence, except that from the medical examiner, but including that from the defendant, comes from persons who, by their own admissions on the stand, were implicated at least to the extent of having been present in the room at the killing, having returned there and having gone to the wharf with the body, and having again returned to the room after that. There is discernible in the testimony of these witnesses some tendency to minimize their respective parts

in the affair. At any rate, it seems plain that the full story has not been told.

1. The defendant's motion for the direction of a verdict of not guilty was rightly denied. He contends that he could not be found guilty of murder, since there was no evidence that he did any shooting or stabbing and, as he says, no evidence that he joined with others in any common plan or design to cause the death of Pomo, or to commit any felony. But without adverting again to the details of the testimony, we think there was ample proof that the defendant, in company with Cortese, De Marco, and Semenza, entered the tenement of Penta in pursuance of a common felonious design or conspiracy, prearranged among the four, and that, while there, the defendant assisted in carrying out that design by adding to the force of numbers through his presence and by guarding the door, and that later, in continued participation with the others, he assisted them in disposing of the body and in effacing the evidences of the crime and thereafter himself became a fugitive from justice. Whether the original felonious design included homicide or went no further than robbery, it supplied the malice aforethought necessary, if homicide was committed in carrying out the design, as the jury could find it was, to render all who actually participated in carrying it out guilty of murder. *Commonwealth* v. *Campbell*, 7 Allen, 541, 543–547. *Commonwealth* v. *Pemberton*, 118 Mass. 36. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 315. *Commonwealth* v. *Devereaux*, 256 Mass. 387, 392, 394, 395.

2. In the cross-examination by the defendant of the medical examiner the judge excluded the questions whether the witness was "working as a criminologist" and whether what he did was "to influence the district attorney to allow . . . [him] to perform a second autopsy on this man for the purpose of unearthing evidence to show where the man lay, and where he drew his last breath." The exclusion was clearly within the discretion of the judge. Answers to such questions as these, whether in the affirmative or in the negative, would not have been helpful. The manner in which the questions were asked, which of course cannot be

reproduced in the record, may have been such as to indicate an attempt to convince the jury that conduct of the medical examiner which was in fact perfectly proper in the performance of his duty was somehow reprehensible. *Commonwealth* v. *Russ*, 232 Mass. 58, 79. *Commonwealth* v. *Corcoran*, 252 Mass. 465, 486. *Commonwealth* v. *McDermott*, 255 Mass. 575, 580. *Commonwealth* v. *Coshnear*, 289 Mass. 516, 527.

3. Photographs of the mouth of the deceased were competent to show that a fragment of tooth found at the alleged scene of the killing fitted a tooth of the deceased, and for other reasons. *Commonwealth* v. *Gray*, 314 Mass. 96, 98.

4. There was no error in excluding evidence offered by the defendant that he had "been troubled with his legs and his arches," had been treated by a doctor, and had worn arch supporters, and that "because of the condition of his legs" he was not physically able to work. This had no bearing upon any issue in the case. The defendant's own testimony showed that he was able to walk; that he walked about the streets as hereinbefore narrated; and that he was present at the commission of the crime.

The defendant's assignments of error numbered nine to sixteen inclusive are directed toward alleged errors in charging the jury. We deal with them in so far as they can be thought to rest upon exceptions duly taken. *Commonwealth* v. *Gray*, 314 Mass. 96, 102.

5. The defendant excepted to the "limited suggestion on the presumption of innocence" contained in the instruction at the beginning of the charge that "the law presumes . . . [the defendant] to be innocent until his guilt is proved beyond a reasonable doubt." In *Commonwealth* v. *Mitchell*, 248 Mass. 536, a substantially similar instruction was said to be inaccurate (see *Commonwealth* v. *De Francesco*, 248 Mass. 9; *Commonwealth* v. *Madeiros*, 255 Mass. 304, 315–316) but not prejudicial to the defendant. See *Commonwealth* v. *Kimball*, 24 Pick. 366, 374; *Commonwealth* v. *Anderson*, 245 Mass. 177, 188–190; *McLoughlin* v. *Sheehan*, 250 Mass. 132, 137; *Commonwealth* v. *Powers*, 294 Mass. 59, 62–64; *Matter of Mayberry*, 295 Mass. 155, 168. If the

defendant had a right to have the jury instructed in terms of the detailed and specific definition of presumption of innocence set forth in the *De Francesco* case instead of in the more generalized form adopted by the judge (which we do not decide), and if the defendant desired the more specific instruction, he should have indicated his preference to the judge instead of excepting in general terms only. *Callahan* v. *Fleischman Co.* 262 Mass. 437, 438–439. *Connelly* v. *Fellsway Motor Mart, Inc.* 270 Mass. 386, 391. *Commonwealth* v. *O'Connell*, 274 Mass. 315, 322. *Anderson* v. *Beacon Oil Co.* 281 Mass. 108, 111. *Commonwealth* v. *DiStasio*, 294 Mass. 273, 285–286. Full and accurate instructions were given on burden of proof and reasonable doubt, and the jury were told that, although they could draw inferences, they could not decide upon guesswork or conjecture. It is not perceived that a definition of presumption of innocence in the more detailed but also more restrictive form of the *De Francesco* case would have been more favorable to the defendant. In any event, we are satisfied he was not harmed.

6. The illustrations and examples given by the judge to the jury in explaining how an inference of combined action might be drawn were pertinent, helpful, and proper. They need not be repeated here in detail.

7. If the defendant can be considered to have excepted to the judge's remark that he was "guilty of a crime like Penta anyway, or would have been if he did nothing more than help dispose of the body or conceal the body and thus help conceal the crime, and a man may have a motive to falsify whatever his connection with the commission of the crime was," there was no error. When this remark is read alone it may seem needlessly to lay stress upon a crime for which the defendant was not being tried and possibly to be prejudicial with the jury. But the context shows that this was part of a statement made in the defendant's interest in pointing out to the jury that they should consider whether acts of the defendant tending to show consciousness of guilt tended to show consciousness of guilt of the crime with which he was charged of being a principal at the murder or

only consciousness of having been associated with the murder as a bystander or implicated as an accessory after the fact — a crime with which he was not charged. It was proper to point out to the jury this limitation in the application of evidence of the defendant's conduct after the killing.

8. There was no error in reading to the jury excerpts from the evidence or in the references to the evidence in the charge. Full and adequate performance of a judge's duty to instruct the jury on the law often makes it desirable and perhaps necessary that he refer to the evidence in considerable detail. *Commonwealth* v. *Walsh*, 162 Mass. 242. *Commonwealth* v. *Horsfall*, 213 Mass. 232, 235. *Commonwealth* v. *Green*, 302 Mass. 547, 555–556. This the judge did fairly and helpfully. How far the judge will go in this respect and what evidence he will mention must, in general, be left to his judgment. *Commonwealth* v. *Polian*, 288 Mass. 494, 499.

9. The defendant complains that further instructions were given after the jury had been sent out and in the absence of his counsel.[1] No exception seems to have been taken, and no complaint is made of the instructions given, which were obviously correct. Further instructions may be given, even though counsel are not in attendance. *Commonwealth* v. *Kelley*, 165 Mass. 175.

10. The defendant's motion for a new trial "in its general aspects was addressed to the sound discretion of the trial judge." *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25. No abuse of discretion is shown. The motion also set forth in great detail many alleged errors in the conduct of the trial. Without implying that there is merit in any of these claims, it will be enough to say that all of them relate to points that were or could have been raised at the trial. The judge was not bound to consider such questions on a motion for a new trial, and his simple denial of the motion shows no intention on his part to exercise his discretion in

---

[1] This was the sixteenth assignment of error, and read: "The defendant assigns as error the act of the court in calling the jury in for further instructions in the absence of counsel for the defendant." — REPORTER.

favor of considering such questions. *Commonwealth* v. *Millen,* 290 Mass. 406, 408. *Commonwealth* v. *McKnight,* 289 Mass. 530, 544. *Commonwealth* v. *Martin,* 304 Mass. 320, 325.

It is proper to add that there is grave doubt whether the assignment of errors in this case was filed within ten days after the written notice of the completion of the summary of the record had been given by the clerk to counsel for the defendant, as required by G. L. (Ter. Ed.) c. 278, §§ 33C, 33D; but, since the practical result is the same, we have dealt with the case on its merits. And, without pausing to determine whether an indictment for murder after a verdict of guilty in the second degree is still "a capital case" and so within the scope of the second paragraph of G. L. (Ter. Ed.) c. 278, § 33E, inserted by St. 1939, c. 341, and assuming that the section applies, we have examined the whole case, and we are satisfied that justice does not require a new trial for any reason.

*Judgment affirmed.*