COMMONWEALTH *vs.* FRANCIS V. J. GRICUS.

Middlesex.    October 2, 1944. — December 11, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Practice, Criminal,* New trial, Ordering verdict, Judicial discretion, Appeal with assignment of errors, Capital case.  *Homicide.  Rape.*

One who commits upon another an unjustified battery which causes his death is guilty of manslaughter at least.

There was no error in refusing to order a verdict of not guilty at the trial of an indictment for murder where the evidence warranted a conviction of the defendant of manslaughter at least.

The provision of G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, that this court may order a new trial of a capital case if satisfied that the verdict was against the weight of the evidence, puts this court in a position respecting the evidence analagous, not to that of a jury, but to that of a trial judge dealing with a motion for a new trial on that ground.

G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, requires this court, apart from questions of law, to consider a capital case broadly as a whole to see whether there has been any miscarriage of justice.

Although penetration is essential to rape, the "commission" of the rape does not necessarily end the instant penetration ceases.

This court, considering a capital case under G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, after a verdict of guilty of murder in the first degree, found that justice did not require a new trial where the evidence warranted findings that the defendant killed a woman by blows of the fist struck either in reducing her to helplessness previous to raping her or, during or after the sexual act, in stilling her outcries as an incident of the rape and at the scene thereof.

INDICTMENT, found and returned on December 9, 1943.

The case was tried before *Good*, J.

*M. King*, (*A. Gottlieb* with him,) for the defendant.

*A. W. Wunderley*, Assistant District Attorney, for the Commonwealth.

LUMMUS, J.    This is an indictment charging the defendant in a single count with the murder of Lillian Parent on November 28, 1943.    Specifications furnished by the Commonwealth set forth the time of the offence as at or

about one o'clock in the morning of that day, the place as that section of Waltham known as the South Side, and the manner of killing as by assault and beating. After a verdict of guilty of murder in the first degree, a sentence of death was imposed, and the execution of the sentence was stayed, as required by G. L. (Ter. Ed.) c. 279, § 4, as amended by St. 1935, c. 50, § 3; c. 437, § 3. See *Commonwealth* v. *Millen*, 290 Mass. 406; *Fine* v. *Commonwealth*, 312 Mass. 252. A motion for a new trial on the three grounds that the verdict was against the law, the evidence, and the weight of the evidence, was denied. The case comes here upon two appeals, one relating to the trial, and the other relating to the denial of a new trial. The appeals are accompanied by an assignment of errors, a summary of the record, and a transcript of the evidence, as required by G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended by St. 1939, c. 341.

The errors assigned are two in number, (1) the denial of the defendant's motion that the judge "direct a verdict of 'not guilty,'" and (2) the denial of the motion for a new trial. Before our powers on appeal in capital cases were enlarged by St. 1939, c. 341 (G. L. [Ter. Ed.] c. 278, § 33E), an appeal ordinarily brought here nothing but questions of law specifically raised by exceptions and then incorporated in assignment of errors. *Commonwealth* v. *Gray*, 314 Mass. 96, 102. And the statute as to exceptions restricts them to "an opinion, ruling, direction or judgment of the superior court rendered upon any question of law." G. L. (Ter. Ed.) c. 278, § 31.

The questions of law raised by the assignment of errors do not appear formidable. A defendant may be convicted of manslaughter upon an indictment charging murder. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 572, 573. There was ample evidence from admissions by the defendant that Lillian Parent was killed by blows of the fist intentionally delivered by the defendant without any justification. A defendant who commits any unjustified battery that happens to cause death is guilty of manslaughter. *Common-*

*wealth* v. *Welansky*, 316 Mass. 383, 401. *Commonwealth* v. *Demboski*, 283 Mass. 315, 322. Since the defendant could properly be convicted of manslaughter at least, there was no error of law in refusing to direct a verdict of not guilty.

The question of law whether a verdict of guilty of murder in the first degree could be rendered upon the evidence conformably to the law, could have been raised at the trial. *Maloof* v. *Post Publishing Co.* 306 Mass. 279, 281. Compare Rule 71 of the Superior Court (1932). For that reason that question cannot be brought here upon exceptions to the denial of a motion for a new trial. Even in a capital case, a party may not bring up by exceptions to the denial of a motion for a new trial a question of law that he raised or could have raised at the trial. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24, 25. *Commonwealth* v. *Cero*, 264 Mass. 264, 275. *Commonwealth* v. *Osman*, 284 Mass. 421, 426. *Commonwealth* v. *Barker*, 311 Mass. 82, 93. *Commonwealth* v. *Venuti*, 315 Mass. 255, 261.

The third ground of the motion for a new trial, that the verdict was against the weight of the evidence, was addressed to the discretion of the trial judge, who had power to grant a new trial when "necessary to prevent a failure of justice" (*Ellis* v. *Ginsburg*, 163 Mass. 143, 146), or when the verdict, if allowed to stand, "would work injustice such as the courts ought not to tolerate." *Loveland* v. *Rand*, 200 Mass. 142, 145. No rulings of law were made or requested upon the motion for a new trial. The question whether a verdict is contrary to the weight of the evidence is, upon analysis, one of fact, although commonly spoken of as one of discretion. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24. *Lonergan* v. *American Railway Express Co.* 250 Mass. 30, 39. *Thorndike, petitioner*, 254 Mass. 256, 259. *McKin* v. *Siegel*, 256 Mass. 269. *Malden Trust Co.* v. *Perlmuter*, 278 Mass. 259, 261. Only in rare instances, of which this is not one, can it be held that the denial of a motion for a new trial is an abuse of discretion amounting to an error of law. *Bartley* v. *Phillips, ante*, 35, 44. The record before us shows no error of law pointed out by any assignment of error.

Statute 1939, c. 341, [1] amending G. L. (Ter. Ed.) c. 278, § 33E, provides that the entry of a capital case in the Supreme Judicial Court "shall transfer to that court the whole case for its consideration of the law and the evidence," and that "the court may order a new trial if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require." That statute opens the facts as well as the law for our consideration. It does not, however, convert this court into a second jury, which must be convinced beyond a reasonable doubt of the guilt of a defendant by reading the reported evidence, without the advantage of seeing and hearing the witnesses. This has been decided under comparable statutes in other jurisdictions, some applicable to capital cases and others applicable to criminal cases in general. *People* v. *Cashin*, 259 N. Y. 434, 441, 442. *People* v. *Becker*, 215 N. Y. 126, 136, quoted by Thacher, J., in *People* v. *Williams*, 292 N. Y. 297, 304. *State* v. *Woodworth*, 121 N. J. L. 78, 90, 91. *Webb* v. *His Majesty's Advocate*, 1927 J. C. (Scot.) 92. *Slater* v. *His Majesty's Advocate*, 1928 J. C. (Scot.) 94, 101. But the statute of 1939 does give us the power and the duty exercised by a trial judge upon a motion for a new trial. So far as the weight of the evidence is concerned, it is the right and duty of a trial judge to set aside a verdict "when in his judgment it is so greatly against the weight of the evidence as to induce in his mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice." *Scannell* v. *Boston Elevated Railway*, 208 Mass. 513, 514. *Bartley* v. *Phillips*, *ante*, 35, 41. "The governing rules of law as to motions for a new trial in capital cases

---

[1] The evidence has been considered under this statute in a number of cases. *Commonwealth* v. *Brooks*, 308 Mass. 367. *Commonwealth* v. *Giacomazza*, 311 Mass. 456, 464. *Commonwealth* v. *Sheppard*, 313 Mass. 590, 611. *Commonwealth* v. *Goldenberg*, 315 Mass. 26. *Commonwealth* v. *Venuti*, 315 Mass. 255. See also *Matter of Loeb*, 315 Mass. 191, 197. In two cases the question was left open whether an indictment for murder remains "a capital case" within the statute after a verdict of guilty in the second degree. *Commonwealth* v. *Goldenberg*, 315 Mass. 26, 34. *Commonwealth* v. *Venuti*, 315 Mass. 255, 262.

are the same as in civil and in other criminal cases." *Commonwealth* v. *Devereaux*, 257 Mass. 391, 395. For a trial judge, or for this court under the statute of 1939, to grant a new trial on the ground that the verdict was against the weight of the evidence, it must appear that the verdict, if allowed to stand, would work a miscarriage of justice. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 22, 23. *Bartley* v. *Phillips, ante*, 35, 41. It is not enough that the judge or judges, if on the jury, would have felt a reasonable doubt which the jury did not share.

However restricted or unfounded may be the propositions of law raised by an appeal in a capital case (and such a case can no longer be brought here upon exceptions, G. L. [Ter. Ed.] c. 278, § 31), when a capital case once gets to this court on appeal, the statute of 1939 now requires us to consider the whole case broadly, to see whether there was any miscarriage of justice. The statute requires us to exercise in capital cases an extraordinary power intimated before though seldom if ever exercised (*Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25; *Carangias* v. *Market Men's Relief Association, Inc.* 293 Mass. 284, 285), and to extend that power to questions of fact as well as those of law.

We proceed to consider the facts in the light of our power and duty under the statute of 1939.

The following facts could have been found upon the evidence. Lillian Parent was a married woman living in Waltham with her husband and three small children. Her husband's mother, who lived with them, was a paralytic, unable to walk without help. Mrs. Parent cared for her and the children, and kept the house. Naturally either Mrs. Parent or her husband had to remain at home practically all the time. She was a very small woman, four feet ten inches tall, and weighing eighty pounds. November 27, 1943, was her thirty-seventh birthday. After the evening meal, about nine o'clock, she went out alone to celebrate her birthday.

She spent a short time with a woman friend, and the rest of the evening sitting alone in different restaurants, drinking ale and beer. Shortly before midnight she was sit-

ting alone in a resort called Antonette's Cafe at 24 Charles Street, Waltham. She went out when the place closed, shortly before midnight, at the same time as a man whom she knew slightly and her husband knew well. She walked with that man to a house in which he lived, apart from his wife, on the first floor. In the house she took off her coat, and sat on a divan with him, and began to caress him while begging him to take her out to some other resort. He told her that he had no money, but he responded to her caresses, and in so doing put his hand on her knee. At this, she jumped up and left the house hurriedly, leaving her coat behind.

The temperature was close to the freezing point, if not below it, and she was lightly clad. She was not drunk, but was slightly under the influence of the ale and beer that she had drunk, and walked unsteadily. She suffered from the cold, and hurried through the streets toward home, with her arms folded across her chest in the attempt to keep warm.

When she reached the corner of Newton and McKenn streets, at about one o'clock in the morning, she passed the defendant, who was talking with a soldier in uniform. The defendant was in civilian clothes. The place was close to his house. The size and physical appearance of the defendant are not shown by the testimony, but the jury saw him, and photographs of his face, head, neck and right hand indicate that he is a powerful young man. In his brief he concedes that he is "a strong young man, weighing over one hundred eighty-five pounds." He, too, was slightly under the influence of liquor.

While the soldier walked away, the defendant accosted Mrs. Parent. What happened then, can be reconstructed partly from the testimony of witnesses, partly from stories told to police officers by the defendant, and partly from the condition of the defendant and of Mrs. Parent's dead body. Her body was found in a playground, some distance away from the place where she encountered the defendant. Her lips were swollen and split, and had bled freely. Her jaw was swollen, one tooth had been knocked out, and

another on the other side had been loosened. A circular contusion of her hand showed that pressure had been applied to it. Her hands were swollen, abraded, discolored and contused. There were many abrasions on her arms, and others on her legs which were consistent with her legs having been spread apart forcibly. According to medical testimony, she was apparently in the last day of menstruation, and her menstrual cloth, attached to a belt, was found five or six feet away from the body. Death had been caused by repeated blows to the jaw, apparently delivered when she was not lying down, and those blows injured the brain. There were indications that her body had been dragged to the place where it was found. She had died not long after one o'clock in the morning.

The defendant, on November 28, had a puncture of the skin at a knuckle of his right hand. His face was scratched. His overcoat had a large stain of human blood. There was human blood on his suit coat, waistcoat and trousers. These were the clothes that he had worn on the night when Mrs. Parent died. He told police officers that his face was covered with blood that night in a fight with an unknown man who was treating Mrs. Parent roughly on the street.

The defendant told conflicting stories to the police officers, and later admitted that all of them except the last one were falsehoods. These stories were designed, apparently, to explain his own wounds without admitting any association with Mrs. Parent. His last story was as follows. When Mrs. Parent passed him, he followed her and caught up with her. She did not repulse him, but walked along with him willingly. She asked him to take her to a resort called the Waldorf. He proposed that they sit on the benches in the playground. But they could find no bench (although a photograph shows one not far from a big tree) and they sat upon the ground close to that tree. He made advances toward sexual intercourse, and took off her menstrual cloth. She made no objection. She willingly permitted sexual intercourse. But when the act was nearly completed she suddenly began to scream and to claw his face. He grasped

her hands to keep her quiet, but she screamed again. Then he determined to "knock her out," and hit her three times with his fist. She relaxed, and he went home, leaving her lying on the ground. The defendant did not testify at the trial.

Upon the evidence, the jury could find that the defendant's last story was false. Shortly after the defendant accosted Mrs. Parent, persons riding by in an automobile saw her with one hand on a fence, keeping him off with her other hand. Then they saw him push her violently into the fence, and afterwards they saw the arms and hands of both moving violently in a struggle. There are improbabilities inherent in his story. The jury might think it improbable that a woman who was not only menstruating but was insufficiently clad and suffering from the cold would desire to engage in sexual intercourse late in November on the bare ground. They might think it unlikely that a woman who had just fled from the advances of an acquaintance who apparently was not repulsive to her, would yield so quickly to a complete stranger. And they might well refuse to believe that a woman willingly engaging in the act would suddenly become so violently unwilling during its progress. The jury might well believe that the only truth in his last story was that he had sexual intercourse with Mrs. Parent and killed her. And they might well find that that intercourse was a rape.

The doctrine of "implied malice" is laid down in *Commonwealth* v. *Chance*, 174 Mass. 245, 252, in these words: ". . . the jury properly might have been instructed that it is possible to commit murder without any actual intent to kill or to do grievous bodily harm, and that, reduced to its lowest terms, malice in murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act, coupled perhaps with an implied negation of any excuse or justification." See also *Commonwealth* v. *Drew*, 4 Mass. 391; *Commonwealth* v. *Webster*, 5 Cush. 295, 306; *Commonwealth* v. *Pierce*, 138 Mass. 165, 178; *Commonwealth* v. *Parsons*, 195 Mass. 560, 569, 570;

*McGurk* v. *Cronenwett*, 199 Mass. 457, 461, 462; *Commonwealth* v. *Pentz*, 247 Mass. 500, 507, 508; *Commonwealth* v. *Bedrosian*, 247 Mass. 573, 576; *Commonwealth* v. *Reilly*, 248 Mass. 1, 6; *Commonwealth* v. *Madeiros*, 255 Mass. 304, 309, 315; *Commonwealth* v. *Gordon*, 307 Mass. 155, 158. We need not consider whether death caused by repeated blows of the fist delivered by a powerful young man like the defendant upon the jaw of a small and frail woman like Mrs. Parent for the purpose of producing unconsciousness could be found to be murder under that doctrine, on the ground that there was a plain and strong likelihood that death would result. *Commonwealth* v. *Fox*, 7 Gray, 585. *Commonwealth* v. *Gordon*, 307 Mass. 155, 158. *State* v. *John*, 172 Mo. 220, 227. *State* v. *Lloyd*, 337 Mo. 990, 997, 998. Neither need we consider whether, if the use of such force was deliberately premeditated, the murder would be one "committed with deliberately premeditated malice aforethought" and consequently murder in the first degree under G. L. (Ter. Ed.) c. 265, § 1, although there was no intention to cause death. See *Commonwealth* v. *Chance*, 174 Mass. 245, 252; *Commonwealth* v. *Bartolini*, 299 Mass. 503, 515; *Commonwealth* v. *Brooks*, 308 Mass. 367, 369, 370.

The principle that is decisive in this case is that "when a defendant by some act done in the commission or attempted commission of some crime of the degree of felony causes the death of a human being, the killing is with malice aforethought and is murder," and not merely manslaughter. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 309, 310, 315. *Commonwealth* v. *Green*, 302 Mass. 547, 556. *Buel* v. *People*, 78 N. Y. 492. *Cox* v. *People*, 80 N. Y. 500, 515, 516. *People* v. *Smith*, 232 N. Y. 239. *People* v. *Moran*, 246 N. Y. 100. *People* v. *Ryan*, 263 N. Y. 298. *People* v. *Lunse*, 278 N. Y. 303.[1] *Conrad* v. *State*, 75 Ohio St. 52. *Commonwealth* v. *Bruno*, 316 Penn. St. 394. *State* v. *Glover*, 330 Mo. 709. *Whitfield* v. *Commonwealth*, 278 Ky. 111. *In re Heigho*, 18 Idaho, 566. *People* v.

---

[1] For a discussion of the New York cases, see Corcoran, 6 Fordham Law Rev. 43. See also 26 Am. Jur., Homicide, § 39.

*Goodman,* 182 Misc. (N. Y.) 585. The theory of that principle is that the intent to commit some other felony supplies, as matter of law, the "malice aforethought" necessary to make a killing murder. *Commonwealth* v. *Venuti,* 315 Mass. 255, 258. *Commonwealth* v. *Pemberton,* 118 Mass. 36, 43, 44. *Pliemling* v. *State,* 46 Wis. 516. *Regina* v. *Serné,* 16 Cox C. C. 311. *Regina* v. *Greenwood,* 7 Cox C. C. 404. Rape is not only a felony, but a felony "punishable with . . . imprisonment for life" within G. L. (Ter. Ed.) c. 265, § 1. G. L. (Ter. Ed.) c. 265, § 22. The statute makes a "murder committed . . . in the commission or attempted commission of a crime punishable with death or imprisonment for life" murder in the first degree, punishable with death. G. L. (Ter. Ed.) c. 265, § 1. In cases covered by the words quoted, the presence or absence of deliberate premeditation is immaterial. This was stated in the charge in *Commonwealth* v. *Madeiros,* 255 Mass. 304, 311, in a passage approved by the full court at page 315, following *Commonwealth* v. *Pemberton,* 118 Mass. 36, 44. See also *Commonwealth* v. *Desmarteau,* 16 Gray, 1, 9, 10; *Cole* v. *State,* 192 Ind. 29, 36.

Upon the evidence the jury properly could find that the defendant killed Mrs. Parent either in reducing her to helplessness prior to forcible sexual intercourse with her against her will, or in stilling her outcries during such intercourse. In either event, the murder would be murder in the first degree. And although penetration is essential to rape (*Commonwealth* v. *Hussey,* 157 Mass. 415; *Commonwealth* v. *McCan,* 277 Mass. 199, 203), it does not follow that the "commission" of the rape ends the instant penetration ceases. Even though the killing took place after that instant, if the killing was connected with or incident to the rape, and took place substantially at the scene of the rape, the killing could be found to have been "committed . . . in the commission or attempted commission of" the rape, within G. L. (Ter. Ed.) c. 265, § 1, and consequently murder in the first degree. *Commonwealth* v. *Osman,* 284 Mass. 421, 425. *State* v. *Whitfield,* 129 Wash. 134, 138, 139. *MacAvoy* v. *State,* 144 Neb. 827. Com-

pare *State* v. *Opher*, 38 Del. 93.   See also *Commonwealth*
v. *Green*, 302 Mass. 547, 554, 555.

We have discussed the evidence in this case more fully
than ordinarily would be necessary, because the pure
questions of law raised did not present adequately the
difficulties in the case.   We see no reason to think that
any injustice was done to the defendant by the verdict.

*Judgment affirmed.*