COMMONWEALTH *vs.* ROBERT WILLIAM STIRLING, JR.

Middlesex.    March 7, 1966. — June 8, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence,* Photograph; Relevancy and materiality; Of admitted fact; Of
motive; Opinion: expert; Hypothetical question; Illegally seized mate-
rial; Presumptions and burden of proof. *Witness,* Expert witness.
*Search and Seizure.    Homicide.*

The Commonwealth was entitled to introduce evidence at a criminal trial ·
to prove a material fact notwithstanding that the defendant was willing
to stipulate that fact.    [71]
No abuse of discretion appeared at a murder trial in permitting the in-
troduction of various photographs of the victim contended by the de-
fendant to be inflammatory.    [72]
Evidence that the defendant in a murder case had given a bad check in
purchasing a pistol alleged to have been used by him in committing the
murder was relevant to show need of money as a possible motive for the
crime, and also was merely cumulative of evidence, admitted without
objection, of other bad checks given by him.    [72–73]
No error appeared on the record of a murder trial in the allowance of a
certain hypothetical question to a ballistics expert and the admission of
his opinion in answer to the question.    [73]
No abuse of discretion appeared on the. part of the judge at a criminal
trial in finding a certain police officer qualified as a ballistics expert.
[73–74]
A motion, filed by the defendant at the close of the evidence at a criminal
trial, to suppress certain articles which had been admitted in evidence
without objection and the facts as to which had been known to the de-
fendant more than a week before the commencement of the trial, was
not timely.    [74]
On a motion by the defendant in a criminal case to suppress evidence as
illegally obtained, the burden is on the defendant to establish the ille-
gality.    [74]
No error appeared on the record of a criminal trial in denial of a motion
to suppress certain clothing of the defendant searched for and seized
upon proper warrants and admitted in evidence without objection.
[74–75]
Circumstantial and opinion evidence at a trial warranted a finding that
the defendant was guilty of murder in the first degree of a taxicab
driver found dead in his taxicab from six separately aimed and fired
pistol shots into the back of his head, without any sign of a struggle
having occurred.    [75–76]

Commonwealth *v.* Stirling.

INDICTMENT found and returned on February 8, 1965.

The case was tried in the Superior Court before *Rose, J.*

*Walter Powers, Jr.,* for the defendant.

*Donald L. Conn,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him), for the Commonwealth.

REARDON, J. The defendant was convicted of murder in the first degree of Samuel Washington committed on January 30, 1965, in Malden. The jury recommended that the death sentence be not imposed. The case is before us on the defendant's appeal pursuant to G. L. c. 278, §§ 33A–33G, as amended, accompanied by a summary of the record, a transcript of the evidence, and assignments of error. The evidence is summarized as follows.

On Friday, January 29, 1965, the defendant purchased by check at a store in Farmington, Maine, where he lived, a .22 calibre Astra semi-automatic pistol, serial No. 116,964 (the Astra) and two boxes of a certain type of .22 calibre ammunition, and on the same day traveled by bus to Boston carrying the gun and some of the ammunition. He slept that night in the lobby of the Charlestown Y. M. C. A. On Saturday morning he attempted to pawn the Astra in Chelsea but was unable to do so. He claimed that at about noon on Saturday he returned to the Y. M. C. A., paid for a bed in a room containing several beds, and entered the room where he hid the gun and ammunition under the pillow of his bed. Evidence from employees at the Y. M. C. A., however, indicated that the defendant paid for his bed at about 4 P.M. and that he could not have gained entrance to his room before 9 P.M. that evening. On Saturday afternoon he bought a shirt and a pair of trousers. He claimed that he returned to the Y. M. C. A. later that day, watched a dance which was being held there, and went to bed in the evening, finding the gun where he had left it during the early afternoon. The victim, Samuel Washington, was working as a cabdriver on the evening of January 30. He made the last entry on his waybill about 6:30 P.M. and was killed between that time and shortly after midnight when

his body was discovered in a cab in Malden. He had been shot with a .22 calibre weapon six times in the back of the head at close range. There was a large quantity of blood on the floor of his cab when it was discovered and some blood was spattered about the general interior of the vehicle. The fragments of the bullets recovered in an autopsy subsequently performed were too small to be identified. However, six empty cartridge casings found in the rear of the cab were identified by two ballistics experts as having come from the Astra. Further, the brand of the casings was identified as the same purchased by the defendant when he bought the Astra. The points of impact of all the shots were close together, indicating that each had been aimed by the assailant. It was testified that the Astra, although semi-automatic, required a separate pull of the trigger to fire each shot and the strength of the pull required was greater than that of most such weapons. There were no witnesses, and no fingerprints which had been made by the defendant were found in the cab.

The defendant remained in Boston on Sunday, January 31, and on that day, while visiting the apartment of an acquaintance, he requested that others be quiet during a news broadcast so that he could hear "news of the Malden cab driver." On Monday, February 1, he returned by bus to his home in Farmington, Maine. A Farmington constable questioned him on that day regarding his having stolen a .32 Biretta pistol before his departure for Boston. In conversation with the constable he inquired what percentage of committed crimes remained unsolved, and on the following day, February 2, he went to the office of the sheriff of Franklin County, Maine, apparently for the sole purpose of asking the sheriff the same question. The same day he returned the Astra to the store where he had bought it, telling the proprietor, "It has only been fired six times." A short time thereafter a policeman, checking the possible theft of the Biretta by the defendant, discovered that he had purchased the Astra which the policeman later took for checking. On February 3, while the defendant was in the

county jail for questioning regarding the theft of the Biretta, a State policeman saw him and, after informing the defendant of his constitutional rights, questioned him regarding his activities in Massachusetts. The defendant denied having committed the Malden crime but showed great interest at that time in a manual demonstrating the conduct of ballistics tests. A stain was noticed on his trousers. Subsequent tests of that spot and others on his trousers, undershirt, and a pair of gloves belonging to him showed that they were bloodstains. During a lengthy trial, additional evidence was adduced which it is not necessary to relate. At the close of the evidence the defendant filed a motion to suppress certain evidence and a motion for a directed verdict, both of which were denied.

The defendant has alleged six assignments of error which we consider seriatim.

1. The Commonwealth introduced early in the trial without objection eighteen photographs showing the location of the cab and the victim in the cab in which he was found. There was objection by the defendant to the introduction of an additional thirteen photographs on the ground (1) that they had no probative value, and (2) that they proved nothing which the defendant was not prepared to stipulate. The transcript indicates that the Commonwealth's announced purpose for introducing those photographs of the victim taken in the morgue and in the cab, to which there were objections, was to show the close proximity of the wounds, the nature and locations of the impact of the bullets, and the absence of any marks on the victim which would indicate the occurrence of a struggle. The photographs objected to were relevant both to the ballistics evidence as it tended to show that the shots were separately aimed and fired, and to the apparent absence of a struggle. They thus were relevant to the nature and degree of the murder which had been committed. See *Commonwealth* v. *McGarty*, 323 Mass. 435, 438-440. Despite the defendant's willingness to make stipulations, "the Commonwealth was entitled to prove its case." *Commonwealth* v. *Valcourt*,

333 Mass. 706, 712. These challenged photographs, some in color and some not, "had evidential value on a material matter, and were not made inadmissible because they could be considered inflammatory." *Commonwealth* v. *Lamoureux,* 348 Mass. 390, 393. See *Commonwealth* v. *Devlin,* 335 Mass. 555, 564. "Whether such evidence was so inflammatory in nature as to outweigh its probative value and preclude its admission is a question to be determined by the trial judge in the exercise of his sound discretion." *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279. The judge gave appropriate instructions to the jury at some length, both at the time the photographs were admitted and later in his charge, which adequately protected the defendant. There was no abuse of discretion in the admission of the photographs.

2. In eliciting the circumstances of the purchase of the Astra, the Commonwealth brought out that the check with which the defendant paid for the gun had been drawn on insufficient funds. We consider this point despite the tardiness of the defendant's objection and exception. See *Commonwealth* v. *Heffernan,* 350 Mass. 48, 52. This fact was part of the "attendant circumstances" of the crime and, in its showing that the defendant was in need of money, it tended to establish a possible motive. See *Commonwealth* v. *Durkin,* 257 Mass. 426, 428; *Commonwealth* v. *Simpson,* 300 Mass. 45, 50, cert. den. 304 U. S. 565. Here again the judge gave immediate instruction to the jury relative to the purpose for which this check was introduced and warned them that no negative inferences regarding the defendant's character were to be drawn by virtue of the admission of the check. Later in the trial two more bad checks issued by the defendant and cashed in Boston, one on the day of the murder and one on February 1, were admitted without objection and similar instruction was again given the jury by the judge. Without objection there was testimony from the defendant's wife and from police officers regarding the defendant's having written a number of bad checks. Thus the evidence regarding the first check

was merely cumulative. *Commonwealth* v. *Ries,* 337 Mass. 565, 584. *Commonwealth* v. *Palladino,* 346 Mass. 720, 725. There was no error.

3. During the course of the trial a hypothetical question was asked of a ballistics expert. The expert was asked by the district attorney to assume facts, all of which were already in evidence, and on these assumptions, in addition to his findings, to state whether he had an opinion as to whether the Astra which he tested and examined was the weapon used to kill the victim. The expert answered in the affirmative. Immediately thereafter the judge gave the jury instruction on the nature of a hypothetical question and answer and how the jury should evaluate their worth. See *Dickenson* v. *Fitchburg,* 13 Gray, 546, 555–557; *Anderson* v. *Albertstamm,* 176 Mass. 87, 91–92; *Sullivan* v. *Brabason,* 264 Mass. 276, 288–289. See also *M. DeMatteo Constr. Co.* v. *Daggett,* 341 Mass. 252, 261. In addition the judge gave elaborate and careful instruction to the jury in his charge on the weight which they might or might not give to the several hypothetical questions directed to ballistics experts during the trial. While the question to which the defendant takes exception was somewhat inartistically phrased and contained possible omissions and irrelevancies, it was not so improperly phrased as to constitute prejudicial error. To a second and similar hypothetical question asked of another ballistics expert by the district attorney there was a similar answer given to the effect that this particular Astra was the weapon which caused the death of Washington. In neither case did the experts endeavor to judge the truth of the hypotheses upon which they based their opinions. There was in addition a bulk of evidence from other sources which tended to identify the Astra as the one from which the fatal shots were fired. We thus find no error in this assignment.

4. Despite the lack of objections and exceptions to a certain ballistics expert's testimony, we have reviewed the defendant's contention that Lieutenant Collins, the alleged expert, was not qualified. The question was one within the

discretion of the trial judge. *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 137. *Perkins* v. *Stickney,* 132 Mass. 217, 218. *Commonwealth* v. *Spencer,* 212 Mass. 438, 447–448. No error appears.

5. Trial commenced on June 23, 1965. On June 28, 1965, certain clothing belonging to the defendant was admitted in evidence without objection. On July 1, 1965, at the close of the evidence, the defendant filed a motion to suppress evidence, i.e., the clothing. In the motion he recited that he knew the facts concerning the clothing on or about June 15, 1965, more than a week before trial.

The motion to suppress was not timely. See *Commonwealth* v. *Laudate,* 345 Mass. 169, 170; *Commonwealth* v. *Lewis,* 346 Mass. 373, 382; *Segurola* v. *United States,* 275 U. S. 106, 111–112. See now Rule 101B of the Superior Court (1954). We nonetheless consider the defendant's contention because of the gravity of the case, bearing in mind that "[o]n a motion to suppress the burden of establishing that evidence has been illegally obtained is on the moving party." *Commonwealth* v. *Fancy,* 349 Mass. 196, 202.

The defendant contends that one of the persons upon whom the two warrants were served was in "constructive possession" of the clothes and might be said to be a bailee. He argued, "This being the case, in the absence of proper service or notice the search warrant is illegal." *United States* v. *Birrell,* 242 F. Supp. 191 (S. D. N. Y.). In that case at pp. 198–200, the court held only that the defendant had standing to make timely objection to a search and a seizure of his property. The property there had been in control of the defendant's lawyer who had objected to the search and seizure at the time of its occurrence. However, assuming arguendo that the defendant here has standing to object to an illegal search and seizure, we find nothing in the record, motion or brief which impugns the legality of the warrants, the service of the warrants, or the searches or seizures.

There was no forcible entry and no objections to the

searches were made by either of the persons who surrendered the clothing. Proper warrants were in the possession of the searching officers and the officers so announced at the time they were permitted to enter and search. Though neither person in control of the clothing requested to see a warrant or challenged the search, the officers had one of those persons read the warrant before the articles of clothing named in the warrant were taken from the searched premises. *Miller* v. *United States,* 357 U. S. 301, 306–314. *Ker* v. *California,* 374 U. S. 23, 37. *People* v. *Maddox,* 46 Cal. 2d 301, 304–307. See *Commonwealth* v. *Rossetti,* 349 Mass. 626, 634. See also G. L. c. 276, §§ 1, 2, 3, 3A; 15 Maine Rev. Sts. Annotated, §§ 53, 54, 55; 18 U. S. C. § 3109 (1964). No error appears.

6. As his sixth assignment of error, the defendant complains of the denial of his motion for a directed verdict on the grounds, first, that there was no evidence that projectiles causing death came from the defendant's gun. While this is so it was because the projectiles themselves, small calibre as they were, were left in such condition as to defy identification. The six cartridge cases found in the cab and amply identified in the ballistics tests were sufficient evidence to enable the jury to identify the murder weapon. *Commonwealth* v. *Balliro,* 349 Mass. 505, 511, is inapposite in that in the *Balliro* case there were several possible weapons from which the fatal bullet might have come, and the question in that case was which one of those weapons constituted the source. The second ground was that there was no evidence that the killing was done with malice and deliberate premeditation. The Astra not being automatic but requiring six separate hard pulls to fire the six shots, and the wounds being in the back of the victim's head without a sign of there having been a struggle, the jury could properly find "deliberately premeditated malice aforethought." *Commonwealth* v. *Brooks,* 308 Mass. 367, 369. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 355–356. See *Commonwealth* v. *Merrick,* 255 Mass. 510, 514; *Commonwealth* v. *Holiday,* 349 Mass. 126, 128; *Commonwealth*

v. *Fancy*, 349 Mass. 196, 200. Third, the defendant further states that the Commonwealth failed to show that he was near the scene of the crime alleged and that he, and no one else, committed the crime. While it is true that there was no eyewitness to the crime and that the evidence comprised a large number of facts which joined together convinced the jury of his guilt the chain of circumstantial evidence in this case was extremely strong and was such as properly to persuade a jury. There was no error in denying the motion for a directed verdict. See *Commonwealth* v. *Richmond,* 207 Mass. 240, 246–247.

7. In accordance with the responsibility laid upon us by G. L. c. 278, § 33E, we have reviewed the evidence with care, have noted the skill with which both prosecution and defence presented their cases and the comprehensive charge of the judge, and are of the opinion that justice does not require that there be a new trial.

*Judgment affirmed.*