COMMONWEALTH *vs.* THEODORE WALKER, JR.

Suffolk.  October 6, 1983. — December 9, 1983.

Present: GRANT, KAPLAN, & KASS, JJ.

*Homicide. Felony-Murder Rule. Evidence,* Photograph. *Practice, Criminal,* Severance.

At a murder trial, at which the defense did not object to the omission from relevant jury instructions of requirements that, for a verdict of guilty on an accessorial basis, the jury must find that the defendant knew his confederate had a gun, and that, for a verdict of guilty of felony murder, they must find that the defendant had acted with conscious disregard of risk to human life, no substantial risk of a miscarriage of justice appeared in view of evidence both that the defendant had handed his confederate a gun and therefore knew he had it, and that the defendant and his confederate were engaged in an armed assault, a crime inherently dangerous to human life. [197-198]

At a murder trial, the judge properly exercised his discretion in admitting in evidence a photograph of the victim's body showing the location of a bullet wound. [199]

The judge at the trial of indictments charging the defendant with the murder and armed assault of one victim, the armed robberies of three other victims, and the carrying of a firearm did not abuse his discretion in joining the charges for trial. [199]

INDICTMENTS found and returned in the Superior Court Department on August 3, 1981.

The cases were tried before *Kelley,* J.

The case was submitted on briefs.

*Walter B. Prince* for the defendant.

*Newman Flanagan,* District Attorney, *Paul F. Connolly & Ellen M. Donahue,* Assistant District Attorneys, for the Commonwealth.

KAPLAN, J.  One indictment accused the defendant of the murder in the first degree of Gerald M. Walsh; a second, of an armed assault on Walsh with intent to rob.  Three indict-

ments charged the defendant with armed robberies in other incidents (the respective victims were Theodore Rush, Kenneth Parris, and Robert Coveney). There was a sixth indictment for carrying a firearm. All these offenses were stated to have been committed on July 26, 1981. Upon trial to a Suffolk County jury, the defendant was convicted of murder in the second degree on the murder indictment, and convicted also on each of the other indictments, and sentenced as indicated in the margin.[1]

1. The jury could find on the evidence that the defendant with an accomplice, Jonathan Kirkland (not jointly tried), was on a continuous criminal rampage during the early morning hours of July 26.[2] In the company of Kirkland, the defendant robbed Rush, at gunpoint, of a Cadillac car. This occurred on Mt. Pleasant Avenue in the Roxbury area of Boston. With Kirkland in the passenger seat, the defendant drove in the stolen car to an Amoco gas station on Washington Street near Chilcott Place, Jamaica Plain. When Walsh, the station attendant, recognizing that this was a holdup, turned and ran, Kirkland, to whom the gun was passed, killed Walsh instantly with a shot to the back. The two drove to an all-night variety store called "Odds and Ends" on Blue Hill Avenue, near Wales Street, Dorchester. After conferring outside, they entered the store. The defendant, who knew and was known by the salesman Parris, made a purchase and left the store; Kirkland, then, wielding the gun, relieved Parris of the contents of the cash register. Then followed a robbery of Fox's Gulf station on Blue Hill Avenue near Babson Street, Mattapan, in which the gun was first displayed to Coveney by the defendant, and then

---

[1] Mandatory life imprisonment for the murder; not less than eighteen nor more then twenty years for the armed assault, to be served concurrently with the life sentence; concurrent sentences of not less than nine nor more than twelve years for the armed robberies, to run on and after the life sentence; not less than three nor more than five years on the firearm conviction, to be served concurrently with the life sentence.

[2] Some details amplifying the brief account here given will appear at point 3 below.

by Kirkland. By this time the police were on the prowl. A cruiser located the Cadillac moving around Woodrow Avenue and Norfolk Street, Dorchester, and followed it on Norfolk Street toward Codman Square, then up Washington Street, and left on Aspinwall Road, where the defendant and Kirkland abandoned the car and fled. One of the officers pursued the defendant but lost him on Rosedale Street. Later the same morning the defendant and Kirkland were apprehended and brought to the District 2 police station. After Miranda warnings the defendant made a statement, unrecorded, then a second statement, inscribed on tape.

2. The judge in his instructions defined murder in the two degrees — with malice aforethought, premeditated, and the same, unpremeditated. Although the watershed case of *Commonwealth* v. *Matchett*, 386 Mass. 492, 508 (1982), had already been decided shortly before the trial, the judge defined felony-murder in the conventional style: If a killing was shown to have occurred during the commission of a felony punishable by life imprisonment — armed robbery or attempted armed robbery (both described) — the jury could return a verdict of murder in the first degree. If the felony was of a kind not so punishable — unarmed robbery or attempted unarmed robbery, armed or unarmed assault with intent to rob, larceny or attempted larceny of an amount exceeding one hundred dollars (all described) — the verdict could be murder in the second degree.[3] The judge also charged on carrying a firearm and, in the usual terms, about joint enterprise.

It will be apparent that parts of the instructions were out of harmony with the *Matchett* case on felony-murder. According to *Matchett*, if a killing occurred in the course of a felony which could be committed without inherent risk to life — unarmed robbery or attempted unarmed robbery, unarmed assault with intent to rob, larceny over one hun-

---

[3] In mentioning offenses other than those named in the indictments, the judge was speaking to "included" offenses.

dred dollars, committed or attempted — felony-murder could be predicated only if it was shown that the person was acting with conscious disregard of risk to life. See also *Commonwealth* v. *Moran,* 387 Mass. 644, 650-651 (1982). And we have to add that, although the instruction on joint enterprise followed the familiar pattern, it did not, as applied to the crimes which involved the use of a weapon, lay the stress called for by *Commonwealth* v. *Watson,* 388 Mass. 536, 544 (1983), on the requirement for accessorial responsibility that the person who did not himself use a weapon shall have known that his partner had the weapon which that partner in fact used.

3. The defendant did not object to the relevant instructions. Thus the question on this appeal is whether the record discloses "a substantial risk of a miscarriage of justice" within the policy of *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967); and see, e.g., *Commonwealth* v. *Boiselle,* 16 Mass. App. Ct. 393, 399 (1983). Compare *Commonwealth* v. *Silva,* 388 Mass. 495, 505-506 (1983) (failure to object to lack of *Matchett* instruction; conviction upheld; no injustice in light of the proof). Not only is there no likelihood of a miscarriage; it appears with very high probability that the conviction of murder in the second degree, which is the conviction here contested, was rendered on lines consistent with the *Matchett* and *Watson* decisions. Compare *Commonwealth* v. *Hennessey, ante* 160, 163-165 (1983).

The victim Rush identified the defendant as the man who confronted him with a gun as he sat in the Cadillac car, and the jury must be taken to have found beyond a reasonable doubt that this was the fact as an ingredient of their verdict convicting the defendant of the armed robbery of Rush. (They disbelieved the defendant's statement at District 2 that Kirkland had already stolen the car before he and Kirkland first confederated.) From the armed robbery the partners went to the Amoco station and their activities there were found by the jury to constitute the commission by the defendant of an armed assault with intent to rob. It could

be readily inferred that the defendant, who wielded the gun against Rush, had it still in his possession during the next criminal event;[4] and we have, further, the defendant's statement to the interrogating officer at District 2 that he, the driver of the car, passed his gun to Kirkland, who then fired at the victim through the open window on the passenger side.[5]

In the circumstances we see that the *Watson* requirement was fulfilled in fact: if the defendant's responsibility for the armed assault is put on an accessorial basis, there was enough to show that he knew his accomplice had a gun because he had handed it to him.[6] And if the jury found the defendant guilty of a felony-murder in the second degree, basing themselves on the felony of the armed assault — as appears very likely — *Matchett* was satisfied because that crime is inherently dangerous to human life, like the attempted armed robbery that was held to be so in *Commonwealth* v. *Currie*, 388 Mass. 776, 784-787 (1983).[7]

---

[4] It should be noted here that armed robbery may be made out by proof that a defendant was in possession of a weapon in the course of a robbery, although he did not display or use it. See *Commonwealth* v. *Nickologines*, 322 Mass. 274, 277 (1948). Cf. *Commonwealth* v. *Howard*, 386 Mass. 607, 608 (1982).

[5] This was part of the defendant's unrecorded statement testified to by the interrogating officer. The recorded statement does not deal with this point. There was testimony by Coveney suggesting that the defendant passed a gun to Kirkland at the Fox's Gulf station robbery.

[6] We note that *Watson* would be satisfied, also, if Kirkland was using his own gun at the Amoco station while the defendant was simultaneously in possession of a gun. See n.4 above.

[7] The jury perhaps avoided the whole issue of felony-murder by convicting the defendant of unpremeditated homicide with malice aforethought. On the other hand, the judge charged on felony-murder arising from larceny without paying attention to the *Matchett* requirement that the jury find circumstances pointing to a conscious disregard of risk to human life. However, the judge himself indicated to counsel that any larceny route to felony-murder in the present case was very improbable, and of course there was no proof that anything was taken, larcenously or otherwise, at the Amoco station. It is not plausible to assume that the jury in fact followed any larceny route.

4. The defendant objected to the admission in evidence at trial of a photograph of Walsh's body showing the location of the bullet wound. We think the judge's deliberated exercise of discretion in the matter cannot be faulted. See *Commonwealth* v. *Stirling,* 351 Mass. 68, 71-72 (1966); *Commonwealth* v. *Torres,* 367 Mass. 737, 742 (1975); *Commonwealth* v. *Bys,* 370 Mass. 350, 361 (1976); *Commonwealth* v. *Jones,* 373 Mass. 423, 426 (1977).

5. The trial judge "shall join" charges for "related offenses" for trial "unless he determines that joinder is not in the best interests of justice." Mass.R.Crim.P. 9(a) (3), 378 Mass. 859 (1979). See *Commonwealth* v. *Sylvester,* 388 Mass. 749, 758 (1983). After being exposed to the characteristics of the case by reason of extended pretrial hearings, the judge decided upon joinder. Evidently there was a pretrial motion by the defendant "for relief from prejudicial joinder" under Mass.R.Crim.P. 9(d) (2), 378 Mass. 860 (1979), although he seems not to have followed the procedure of the rule. We discern no abuse of discretion in the judge's denying severance of the charges. See *Sylvester, supra* at 754; *Commonwealth* v. *Jervis,* 368 Mass. 638, 645 (1975); *Commonwealth* v. *Gallison,* 383 Mass. 659, 671-672 (1981). He did take the precaution of severing the defendant's trial from Kirkland's.

*Judgments affirmed.*