## COMMONWEALTH *vs.* ROLAND SYLVESTER.

Middlesex. April 6, 1987. — June 29, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Presumptions and burden of proof, Verdict, Assistance of counsel, Capital case. *Intoxication. Joint Enterprise.*

No error appeared in the judge's instructions to the jury at a murder trial on the issue of mental impairment due to intoxication with regard to the issue of extreme atrocity or cruelty. [336-338]

At a murder trial, the judge's reference to "scanty evidence" during his charge to the jury regarding joint venture, when considered in light of the charge as a whole, did not create an impression that the degree of proof was less than "beyond a reasonable doubt," and, consequently, there was no error. [338-340]

There was no merit to a claim by a defendant, who had been found guilty by a jury of first degree murder by reason of both premeditation and extreme atrocity or cruelty, that it was impossible to tell whether the jury's verdict was unanimous as to each basis for his conviction. [340]

At a first degree murder trial, defense counsel's decision not to object to the judge's instructions to the jury with regard to voluntary intoxication did not render counsel's assistance ineffective, where the judge's charge, when considered in its entirety, properly instructed the jury on the crime of first degree murder by reason of extreme atrocity or cruelty, and where the defendant's own testimony tended to show that he had functioned unimpaired by the amount of alcohol he had consumed. [340-342]

INDICTMENTS found and returned in the Superior Court Department on May 22, 1984.

The cases were tried before *John T. Ronan, J.*

*Robert L. Sheketoff* for the defendant.

*Fern L. Nesson,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a jury trial in the Superior Court, the defendant was found guilty of murder in the first degree, aggravated

rape, and kidnapping. The defendant was sentenced to a term of natural life on the murder conviction, a concurrent life term on the rape conviction, and a concurrent term of 9½ to 10 years on the kidnapping conviction, all to be served at the Massachusetts Correctional Institution at Walpole (now Cedar Junction). The defendant filed timely appeals of his convictions. The defendant contends that trial counsel's failure to raise objections to the trial judge's charge constituted ineffective assistance of counsel. He challenges the jury instructions as creating a substantial risk of a miscarriage of justice in various respects. He claims that the instruction on joint venture diluted the Commonwealth's burden of proof and that the instructions with regard to voluntary intoxication not only erroneously required a higher level of intoxication but also shifted the burden of proof to the defendant. He finally claims that the jury verdict is flawed as it is impossible to ascertain whether it was unanimous.

On April 26, 1984, the defendant and John Murray[1] met the victim at "The Raft," a lounge in Lowell, and later drove her to the defendant's apartment. In a statement that the defendant gave to the police,[2] he claimed that both men had consensual intercourse with the victim then forced her to have sex with them. They then tied a bandanna around her mouth, forced her into the defendant's car, drove her to the river, pulled her from the car, bound her hands and feet and threw her into the river. He further stated that they watched her struggle for about five minutes until she disappeared under the surface of the water and they left. In his testimony at trial the defendant repudiated his statement and claimed that he never had intercourse with the victim, that he drove Murray and the victim to the river but fell asleep and did not know what happened to the victim until later when Murray responded to his inquiry about the victim by saying that she was "floating down the river."

[1] John Murray, originally a codefendant in this case, committed suicide prior to trial.

[2] The statement was given on May 2, 1984. It was read to the jury and introduced in evidence. The defendant's motion to suppress the statement had been denied and the defendant did not object further at trial.

Because the defendant was convicted of first degree murder, we will review the convictions under the broad standard of G. L. c. 278, § 33E, to determine whether there is a "substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Toney,* 385 Mass. 575, 584 (1982).

1. *Jury instructions.* a. *Voluntary intoxication.* The defendant claims that the judge's charge required the jury to find *extreme* drunkenness before considering intoxication in relation to premeditation. He further claims that the charge imposed a requirement that the jury find *significant* impairment before weighing the effect of the voluntary intoxication on the defendant's mental state with regard to extreme atrocity or cruelty. The Commonwealth contends that the instructions merely directed the jury to consider what effect the intoxication, if any, had on the defendant's capacity to deliberate or to reason. Since the jury found the defendant guilty of first degree murder by reason of both premeditation and extreme atrocity or cruelty, we need only consider either ground and, therefore, we analyze the instructions on extreme atrocity or cruelty.

While voluntary intoxication cannot be used to excuse criminal conduct, *Commonwealth* v. *Doucette,* 391 Mass. 443, 455 (1984), the jury may consider the defendant's voluntary intoxication in determining whether the defendant murdered with extreme atrocity or cruelty. *Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 (1982). Furthermore, the jury may consider evidence of the defendant's intoxication with regard to whether the prosecution has proved specific intent beyond a reasonable doubt, where specific intent is an element of the crime. *Commonwealth* v. *Henson,* 394 Mass. 584, 593-594 (1985).[3]

The defendant claims that the judge's charge on intoxication as it relates to extreme atrocity or cruelty was erroneous as it required the jury to find "significant impairment" before they

---

[3] The judge must so instruct the jury, if requested, where evidence tends to show that the defendant was under the influence of alcohol or other drugs at the time of the commission of the crime. *Commonwealth* v. *Henson, supra* at 593.

could consider that factor.[4] In *Commonwealth* v. *Gould,* 380 Mass. 672, 685 (1980), this court held that a defendant's mental state is a factor to be considered by the jury in determining whether the defendant's acts were "so shocking as to amount to extreme atrocity or cruelty." "Impairment of a defendant's ability to make a decision in a normal manner may have a direct bearing on the degree of murder, and consequently, on the issue of extreme atrocity or cruelty." *Id.* at 686. Consequently, evidence of intoxication triggers the defendant's entitlement to the jury's determining "as one of the circumstances or facts in the case whether the defendant was so intoxicated at the time the murder was committed that his criminal culpability should be reduced." *Commonwealth* v. *Perry,* 385 Mass. 639, 649 (1982). Mental impairment, whether it be from mental illness or intoxication, is one factor for the jury to consider in relation to extreme atrocity or cruelty. See *Commonwealth* v. *Perry, supra; Commonwealth* v. *Gould, supra.* We have, however, previously upheld a charge instructing the jury "that mental impairment due to intoxication could be relevant to the manner in which murder was committed only if the jury found that [the defendant's] mental capacity was 'substantially' reduced by consumption of alcohol." *Commonwealth* v. *Sinnott,* 399 Mass. 863, 880 (1987). There is no material difference between the charge here and the one upheld in *Commonwealth* v. *Sinnott, supra.*

The defendant further claims that the language of the instructions referred to above shifted the burden of proof to the de-

---

[4] The judge charged: "Did he have a substantially reduced or significantly impaired mental process? Did alcohol or the voluntary ingestion of drugs seriously or significantly impair his mental facilities, if he was in fact under any substantial influence? Was he sober? Was he as the phrase is, 'buzzed,' or under the influence of drug or narcotic to such a degree as that his rational capacity was significantly impaired? Was that impairment substantial? Had he clouded his mental capacities?

"If he was under such a significant impairment, then you may and will weigh that factor along with all of the other factors that you find concerning the manner by which and method employed and degree of force and the time that it took and degree of force by which [the victim] had her life taken from her. It is for you to say whether or not, given the totality of all of the circumstances, those facts indicate extreme atrocity or cruelty."

fendant. We disagree. "[I]ntoxication is not a defense to murder in the first degree that the Commonwealth must disprove. In this respect, it is quite unlike that narrow category of defenses (such as self-defense) that by their very nature negate essential elements of the crime and for this reason their nonexistence must be proved by the Commonwealth beyond a reasonable doubt." *Commonwealth* v. *Costello,* 392 Mass. 393, 405 (1984). Moreover, "we have expressly disavowed any intent to . . . 'transform[ ] an evidentiary factor which the jury can consider into an entirely new element of the crime of murder committed with extreme atrocity and cruelty.' " *Commonwealth* v. *Sinnott, supra* at 879-880, quoting *Commonwealth* v. *Cunneen,* 389 Mass. 216, 228 (1983).

With regard to the charge of extreme atrocity or cruelty, the judge in the present case clearly stated that the impairment was merely a factor to be considered in determining "whether or not, given the totality of all of the circumstances, those facts indicate extreme atrocity or cruelty." He included an extensive charge on the Commonwealth's burden of proof beyond a reasonable doubt, the presumption of the defendant's innocence, and the fact that "[t]he defendant has no burden of disproving anything." Thus, viewing the instructions as a whole, on this aspect of the case, they did not shift the burden of proof to the defendant.

b. *Joint enterprise.* The defendant claims that the judge's charge regarding joint venture diluted the Commonwealth's burden of proof, particularly by illustrating joint venture with a case, *Commonwealth* v. *Drew,* 4 Mass. App. Ct. 30 (1976), where the Appeals Court upheld a conviction because there was evidence, "although scanty," that would permit the jury to infer that the defendant was acting as a "lookout." *Id.* at 31-32.[5] The

---

[5] The judge charged: "Now I want to draw your attention to two actual cases . . . to . . . illustrate the principle of law that I am now discussing . . . One was the case of Charles Perry, and the other was a case of a woman named Darlene Drew . . . . With respect to Charles Perry, . . . there were no facts in evidence from which a jury could have concluded that Perry . . . could aid in any way in the commission of the crime. [But] with respect to Darlene Drew, the Court said that the evidence, though

Commonwealth claims that the instruction was in fact more favorable to the defendant than required.

Under a theory of "joint venture," the prosecution must prove that the defendant "intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime." *Commonwealth* v. *Donovan,* 395 Mass. 20, 26 (1985), quoting *Commonwealth* v. *Richards,* 363 Mass. 299, 307-308 (1973). This court has held that the "jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Soares,* 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). In the present case, the judge charged the jury extensively on "joint venture" (covering seventeen pages of transcript). He instructed that mere acquiescence in the crime was not enough.[6] In response to the jury question during deliberation, the judge cautioned the jury that mere presence would not suffice.

Federal courts have rejected the use of instructions in conspiracy cases which state that "slight evidence" is enough to support a finding that an individual was a member of a conspir-

---

scanty, permitted the jury to infer that [she was] a lookout . . . . The point I make is this, with respect to Perry . . . the principle is, mere knowledge that the crime is going to be committed, even if it's coupled with the subsequent concealment of a completed crime, does not make one guilty . . . . [I]t's necessary that the accused in this case, Roland Sylvester, willfully associate himself in some way with this criminal venture and willfully seek by act or omission of his to make that criminal venture succeed."

[6] The judge stated: "It is not possible to convict a defendant because of any mere acquiescence in the commission of a crime, without any participation as an actor by counseling, aiding or abetting."

While mere presence may not suffice, this court has stated: "[I]f an individual is, by agreement, in a position to render aid, he is an abettor even if he does not participate in the actual perpetration of the crime, '[f]or the presence of the abettor under such circumstances, must encourage and embolden the perpetrator to do the deed, by giving him hopes of immediate assistance.'" *Commonwealth* v. *Soares, supra* at 471-472, quoting *Commonwealth* v. *Knapp,* 9 Pick. 495, 518 (1830). The judge charged the jury in this regard.

acy.[7] *United States* v. *Marsh,* 747 F.2d 7, 13 n.3 (1st Cir. 1984). *United States* v. *Malatesta,* 590 F.2d 1379, 1382 (5th Cir.), cert. denied, 444 U.S. 846 (1979) (*Malatesta II*). The Federal courts found that the use of the words "slight evidence" might imply that the degree of proof was less than for other crimes, i.e., proof beyond a reasonable doubt. *Id.* In view of the charge as a whole in the present case, however, the judge's reference to "scanty evidence" did not create an impression that the degree of proof was less than "beyond a reasonable doubt." Thus, there was no error.

2. *Verdict unanimity.* The defendant claims that it is impossible to tell whether the verdict was unanimous as to each basis for the first degree murder conviction because there was no instruction with regard to unanimity and the jury merely indicated on the jury slip that both premeditation and extreme atrocity or cruelty formed the basis of that conviction. Contrary to the defendant's assertion, the judge did give a general instruction regarding unanimity: "Remember now — I haven't mentioned it before. Maybe at the very beginning — your verdict must be unanimous. All twelve of you must reach the same conclusion." Since there is no evidence to the contrary, we may assume that the jury followed this duty. See *Commonwealth* v. *Caine,* 366 Mass. 366, 375 (1974); *Commonwealth* v. *Lemar,* 22 Mass. App. Ct. 170, 172 (1986). Furthermore, the jurors affirmed the verdict after it was delivered by the foreman. Finally, the evidence supported a finding of guilty of first degree murder on both grounds, premeditation and extreme atrocity or cruelty.

3. *Ineffective assistance of counsel.* The defendant claims that the failure of trial counsel to object to the judge's charge

---

[7] The court in *United States* v. *Malatesta,* 583 F.2d 748, 756 (5th Cir. 1978), cert. denied sub nom. *Bertolotti* v. *United States,* 440 U.S. 962 (1979) (*Malatesta I*), had made the following statement: "[O]nce the existence of a conspiracy and the defendant's participation in it are both established, slight evidence of the defendant's knowledge of the scheme may be sufficient to sustain the jury's finding that he or she was a member." On rehearing, 590 F.2d 1379, the court condemned instructions using the "slight evidence" test. *Id.* at 1381.

constituted ineffective assistance of counsel in violation of his rights under both the State and Federal Constitutions. We disagree. This court has held that if the State standard is satisfied, the Federal standard is necessarily satisfied as well. *Commonwealth* v. *Howell*, 394 Mass. 654, 657 (1985). In determining whether there has been ineffective assistance of counsel we must analyze "the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Triplett*, 398 Mass. 561, 568 (1986); *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 (1985); *Commonwealth* v. *Doucette*, 391 Mass. 443, 457-458 (1984). Normally, this court will not reverse a conviction on this basis unless the defendant shows "that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). See *Commonwealth* v. *Pope*, 392 Mass. 493, 499 (1984).

In the present case, we have concluded that the jury were properly instructed on the crime of first degree murder by reason of extreme atrocity or cruelty. In view of the charge as a whole, the evidence of the defendant's guilt on grounds of both premeditation and extreme atrocity or cruelty, and his own testimony demonstrating his ability to function unimpaired by the amount of alcohol he consumed, the defendant was not deprived of a substantial ground of defense. Further, even if the judge's instructions were otherwise flawed, a first degree murder conviction was proper on the basis of extreme atrocity or cruelty. Thus, the *Saferian* standard is not met in the present case and a new trial is not warranted.

4. *Relief under G. L. c. 278, § 33E.* We have reviewed the whole case on the law and the facts and we determine that the result is consonant with justice. See *Commonwealth* v. *Toney*, 385 Mass. 575, 588 (1982); *Commonwealth* v. *Tavares*, 385 Mass. 140, 157-158, cert. denied, 457 U.S. 1137 (1982). The

evidence supported the jury's verdict on not only the murder charge but also the rape and kidnapping charges. According to the defendant's own testimony, he observed Murray attempting to force the victim to have oral sex with him. At the defendant's suggestion that the victim would start screaming, Murray tied a bandanna around the victim's mouth and told the defendant not to worry when he questioned Murray. After Murray asked him if he would help him "get rid of the girl," he drove Murray and the victim (who still had the bandanna tied around her mouth and may have been crying) to the river. When questioned by the defendant, Murray told the defendant that the victim was "floating down the river." Before they went to the police station he and Murray made up the story about a man meeting the victim at The Raft and her leaving with him.

The statement that the defendant made to the police clearly related that he and Murray both raped the victim, then agreed to kill her because she had seen their faces. They then took her against her will to the river, tied her hands and feet, threw her into the river and watched until she stopped struggling and went under the water. Two witnesses testified that the defendant had admitted killing the victim. Medical evidence showed intact sperm in the victim's vagina indicating intercourse within a few hours before her death. The semen was of two different types and matched the types of Murray and the defendant. In the defendant's apartment the police found strands of the victim's hair and her watch, as well as clothesline and a bandanna resembling the ones used to gag and bind the victim. The police officer testified that a few days after the murder the defendant took them to the murder scene to show them the route he took to the river on the night of the murder, the spot on the riverside where he and Murray bound the victim, where they threw her into the river, and where they disposed of her underwear.

In view of the facts of this case, we decline to grant relief under G. L. c. 278, § 33E.

*Judgments affirmed.*