COMMONWEALTH vs. JAMES E. SILVA, JR.

No. 86-722.

Bristol.  April 21, 1987. — December 31, 1987.

Present: DREBEN, QUIRICO, & SMITH, JJ.

*Homicide. Felony-Murder Rule. Constitutional Law,* Assistance of counsel.
*Practice, Criminal,* New trial, Appeal.

No error appeared in the denial of a criminal defendant's motion for new trial
based on claims of error in the jury instructions and of ineffective assist-
ance of trial counsel for failure to object thereto, where the same issues
could have been, but were not, raised by the defendant's appellate
counsel on direct appeal of the conviction. [224-225]

A criminal defendant's motion for a new trial based on a claim of ineffective
assistance of counsel was properly denied, where trial counsel's failure
to object to the judge's instruction on felony-murder, which was correct
at the time given, in anticipation of a new felony-murder standard enun-
ciated three years after the trial did not amount to ineffective assistance
of counsel [225]; furthermore, the defendant failed to show that he had
been deprived of an available substantial ground of defense inasmuch
as the claim of error in the judge's instruction had been considered on
appellate review of the conviction and no risk of a miscarriage of justice
had been found [226-228].

INDICTMENTS found and returned in the Superior Court De-
partment on February 12, 1979.

A motion for a new trial, filed on October 15, 1984, was
heard by *Chris Byron,* J.

*Thomas C. Federico,* Committee for Public Counsel Serv-
ices, for the defendant.

QUIRICO, J.  On October 18, 1979, the defendant was con-
victed of second degree murder (Indictment No. 4000), kidnap-
ping (Indictment No. 4001), and one count of larceny of a
motor vehicle (Indictment No. 4002). The trial judge sentenced
him to life imprisonment for the murder conviction and imposed

concurrent terms of three to five years for each of the other convictions.[1] The Supreme Judicial Court heard the defendant's appeal and affirmed the convictions in *Commonwealth* v. *Silva,* 388 Mass. 495 (1983).

In October of 1984, Silva filed a pro se motion for a new trial. See Mass.R.Crim.P. 30(b) & (c), 378 Mass. 900-902 (1979). A judge of the Superior Court appointed a lawyer from the Committee for Public Counsel Services to represent the defendant in the matter.[2] The appointed counsel then filed a "supplement" to the defendant's pro se motion and a memorandum of law in support thereof. The trial judge having retired, another judge of the Superior Court, after holding a hearing thereon, denied the motion and supplement thereto on December 4, 1985, without any accompanying memorandum or written decision. The defendant's appeal from that denial is now before this court, and we affirm the denial.

The facts of the case, as set out in the opinion of the Supreme Judicial Court in 388 Mass. at 497-500, were largely derived from the defendant's own pretrial statements which were in turn substantiated by his trial testimony. On January 12, 1979, the defendant came upon an automobile parked next to a Norton pharmacy with its engine running. *Id.* at 499. He jumped into the vehicle intending to take a "joy ride" and then, as he shifted into gear, noticed there was an elderly woman sitting in the passenger seat. *Id.* at 499, 500. The defendant "panicked" and drove off. *Ibid.* The woman, Diane Dion, told him she suffered from high blood pressure and had just returned from a doctor's

---

[1] With the defendant's consent the court ordered that two other counts of larceny of a motor vehicle be placed on file without a change of plea.

[2] The defendant has been represented by different counsel at three different stages of this case and, to avoid any confusion, we refer to them as follows: "trial counsel" refers to the counsel who represented the defendant at the pretrial and trial proceedings through the jury verdict; "first appellate counsel" refers to counsel who represented him through the appeal to the Supreme Judicial Court resulting in the decision in 388 Mass. 495 (1983), and "present counsel" refers to counsel representing him in the present appeal from the denial of the motion for a new trial.

office. *Id*. at 499.[3] As the defendant drove through the grounds of the Paul A. Dever School in Norton, the victim slumped forward in her seat and passed out. *Ibid*. After unsuccessfully attempting to resuscitate the victim, the defendant put her in the back seat of the automobile and later transferred her to the trunk. *Ibid*. He testified that he thought Mrs. Dion was dead. *Id*. at 499, 500. He drove the vehicle to a cart path on the grounds of the Dever School and, with the victim still shut up in the trunk, set the automobile on fire. *Id*. at 499.[4] The defendant remained nearby until the automobile was totally engulfed in flames. *Ibid*. A doctor testified at trial that the victim was alive when the fire started and had died as a result of the fire. *Id*. at 497.

When present counsel filed the "supplement" to the defendant's earlier pro se motion for a new trial, he based the claim for relief on trial counsel's allegedly ineffective representation of the defendant on two occasions during the course of the trial. Those occasions were when trial counsel failed to object to (1) the judge's statement to the jury that he did not believe that they could return a "not guilty verdict", and (2) the judge's omission of an instruction that the defendant could not be convicted of felony-murder unless the jury found that the underlying felonies involved circumstances demonstrating the defendant's conscious disregard of the risk to human life. The defendant, through his present counsel, contends that on each of those two occasions trial counsel's failure to object and otherwise protect his rights, amounted to "serious incompetency, inefficiency, or inattention — behavior of counsel falling measurably below that which might be expected from

---

[3] That day Dion's daughter, Beatrice Miller, had driven Dion to a doctor's appointment and, following the appointment, had driven to Haskins Pharmacy in Norton and left Dion in the car while she went inside. 388 Mass. at 497. Miller was in the pharmacy for only a few minutes, and when she emerged she saw a young man driving off with her automobile and her mother. *Ibid*.

[4] Silva admitted he had stolen and burned other vehicles, including two found on the cart path near the place where the vehicle containing the victim was burned.

an ordinary fallible lawyer . . . ." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). We shall discuss those two issues separately, in the order in which they were argued in present counsel's brief, and state our basis for affirming the judge's denial of the motion for a new trial.[5]

1. The defendant had been indicted for first degree murder. The defendant himself admitted that he had committed acts which warranted at least a verdict of manslaughter, and his obvious trial strategy was to attempt to persuade the jury to return a verdict of that lesser crime. Just prior to the judge's instructions, trial counsel strenuously beseeched the jury to return a verdict of manslaughter. He commenced his closing argument by stating, "There isn't any question that [the defendant], on that tragic day, set into motion a chain of events that led to Mrs. Dion being burned in the trunk of that car" and continued by exhorting the jury, "[F]ind him guilty of the correct crime." In the course of reviewing the possible verdicts on the murder indictment, he stated, "Now, we come to the next type of crime, which I submit to you is what [the defendant] is guilty of in this case if you listen to what the judge tells you. He is guilty of involuntary manslaughter," and went on to ask that the jury "[f]ind him guilty of the correct charge, and that charge is, he is guilty of manslaughter." Trial counsel concluded by urging, "Do what you have to do; and I'm asking you now that, if you listen to [the judge], I think you will agree with me that [the defendant] who took that life tragically is guilty of manslaughter and not murder."

The final arguments of trial counsel and the prosecutor were followed by the judge's instructions to the jury, during the course of which the judge stated: "The jury always has the province to make its own conclusion in spite of the evidence and conceivably to enter a not guilty verdict. I don't see how on the evidence there could be such a verdict — a complete vin-

---

[5]These are the only issues covered by present counsel's brief and oral argument. Therefore, other issues included in the defendant's original pro se motion for a new trial are considered waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

dication — but, however, that's for the jury to determine."
Trial counsel made no objection to that instruction.

Considering the quoted statement of the judge, standing
alone, it might be argued that it constituted an invasion of the
exclusive province of the jury in judging the credibility and
weight of the evidence and finding the facts of the case. See
*United States* v. *Martin Linen Supply Co.,* 430 U.S. 564,
572-573 (1977); *Commonwealth* v. *Cote,* 5 Mass. App. Ct.
365, 369-370 (1977). On the other hand, it could be argued
that if the statement were considered in context, it was consis-
tent with the position which trial counsel had espoused through-
out the trial and in his closing arguments as the theory or
strategy of the defense, and that the defendant was not deprived
of an available defense but rather was given the benefit of the
only conceivable defense available on the facts admitted by
the defendant. *Commonwealth* v. *Sellon,* 380 Mass. 220, 228
(1980). *Commonwealth* v. *Bertrand,* 385 Mass. 356, 367-368
(1982). *Commonwealth* v. *Sielicki,* 391 Mass. 377, 382 (1984).

In any event, it would serve no useful purpose to continue
to identify or to discuss arguments on either side of the present
issue because in this particular case there are circumstances
which compel us to affirm the judge's denial of the motion
for new trial insofar as the motion was based on the present
claims of error in the trial judge's instruction and of ineffective
assistance of counsel in failing to object thereto. It is undisputed
that trial counsel made no objection to the instruction when it
was given. It is also undisputed that the defendant's first appel-
late counsel made no attempt to raise the issue during the
appeal which resulted in the decision published in 388 Mass.
495 (1983). The defendant has made no claim that first appellate
counsel was incompetent or that he rendered ineffective assist-
ance to the defendant in the prosecution of that appeal.

It has long been and is still "the unbroken practice both
under the statute [and now under rules of practice] and at
common law respecting motions for new trial not to examine
anew the original trial for the detection of errors which might
have been raised by exceptions taken at the trial." *Common-*
*wealth* v. *Dascalakis,* 246 Mass. 12, 24 (1923). *Common-*

*wealth* v. *Underwood,* 358 Mass. 506, 510-511 (1970). "Although a trial judge may not be compelled by a motion for a new trial to review and reconsider questions of law which could have been raised at the trial, he nevertheless has the power to do so at his discretion. If he does so, his rulings on the questions may be presented to this court on appeal or exceptions." *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 (1973). *Commonwealth* v. *Blondin,* 324 Mass. 564, 566-567 (1949). There is nothing in this case to indicate that the judge who denied the motion for a new trial either intended to exercise, or exercised, his discretion in favor of considering questions which could have been, but were not, raised at the trial. *Commonwealth* v. *Venuti,* 315 Mass. 255, 261-262 (1943). *Commonwealth* v. *McLaughlin,* 364 Mass. at 230-231.

2. The trial judge correctly instructed the jury on the Massachusetts law of felony-murder as it stood at the time of the trial. *Commonwealth* v. *Silva,* 388 Mass. at 504-505 ("judge's charge was free of error when it was given"). *Commonwealth* v. *Matchett,* 386 Mass. 492, 502-507 (1982). Nearly three years after the trial, the Supreme Judicial Court in *Commonwealth* v. *Matchett, supra,* enunciated a new standard for instructions on common law felony-murder. In *Matchett,* the court held that where the underlying crime is not inherently dangerous to human life,[6] the judge must instruct the jury that it cannot find the accused guilty of felony-murder unless it finds "that the [crime] involved circumstances demonstrating the defendant's conscious disregard of the risk to human life." 386 Mass. at 508. See *Commonwealth* v. *Silva,* 388 Mass. at 503-504. See also Perkins & Boyce, Criminal Law 65-66, 70 (3d ed. 1982); LaFave & Scott, Substantive Criminal Law

---

[6] In *Matchett,* the underlying crime was extortion, although the defendant was not actually charged with that crime. 386 Mass. at 498 n. 7. The *Matchett* holding was limited to cases involving offenses such as extortion (see 386 Mass. at 508), but, along with the holding in *Commonwealth* v. *Moran,* 387 Mass. 644, 651 (1982), it has been more generally applied. See *Commonwealth* v. *Currie,* 388 Mass. 776, 784-785 (1983); *Commonwealth* v. *Carter,* 396 Mass. 234, 234-235 (1985); *Commonwealth* v. *Walker,* 17 Mass. App. Ct. 194, 196-197 (1983).

§ 7.5 (b) (1986). In *Commonwealth* v. *Moran,* 387 Mass. 644, 650-651 & n.3 (1982), the court gave *Matchett* limited retroactive effect and extended its reach to cases where the underlying crime was unarmed robbery.

The defendant now claims that he was deprived of a substantial defense because his trial counsel did not have the foresight to object to the felony-murder charge which, at the time of trial, was entirely correct. See *Commonwealth* v. *Silva,* 388 Mass. at 505. There are several reasons why the defendant is not entitled to relief on this claim.

a. Since the instructions of the trial judge were free from error when given, the failure of trial counsel to object to those instructions could not amount to "serious incompetency, inefficiency, or inattention" or "behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. at 96. *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978) ("manifestly unreasonable"). *Commonwealth* v. *Bertrand,* 385 Mass. at 368-369 ("illogical, uncomprehensible, or in the circumstances incorrect"). Contrast *Commonwealth* v. *Rossi,* 19 Mass. App. Ct. 257, 258-260 (1985). We will not judge the performance of trial counsel by hindsight. *Commonwealth* v. *Adams,* 374 Mass. at 729. In this instance, an objection to the instruction would not have accomplished anything material for the defense at trial. *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977).

b. The defendant was not ultimately deprived of any substantial defense because the defendant's first appellate counsel raised and the Supreme Judicial Court fully reviewed his claim that the judge's felony-murder charge erroneously omitted a *Matchett* instruction. See 388 Mass. at 505. Assuming, but not deciding, that *Matchett* applied,[7] the court addressed the

---

[7] The Supreme Judicial Court did not decide whether the underlying crime of kidnapping is inherently dangerous to human life. *Commonwealth* v. *Silva,* 388 Mass. at 505. Contrast Perkins & Boyce, Criminal Law 63-64 (3d ed. 1982) (kidnapping properly classified as "dangerous" crime for purposes of common law felony-murder rule); LaFave & Scott, Substantive Criminal Law § 7.5(b), at 211 & n.24 (modern felony-murder statutes list

issue pursuant to its powers under G. L. c. 278, § 33E, as in effect prior to St. 1979, c. 346, § 2,[8] and held that failure to give the *Matchett* instruction created no risk of a miscarriage of justice because "even without application of the felony-murder doctrine, the proof of malice was overwhelming." *Commonwealth* v. *Silva*, 388 Mass. at 505-506. But see *id*. at 510-512 (O'Connor, J., dissenting). Compare *Commonwealth* v. *Quigley*, 391 Mass. 461, 467 (1984), cert. denied, 471 U.S. 1115 (1985); *Commonwealth* v. *Sylvester*, 400 Mass. 334, 341 (1987). Contrast *Commonwealth* v. *Matchett*, 386 Mass. at 511. Certainly the evidence — consisting largely of admissions by the defendant — was indicative of a conscious disregard for human life.

Where, as here, the highest appellate court in the jurisdiction has held that there was no risk of a miscarriage of justice resulting from the underlying error claimed to have been committed by the trial judge,[9] we fail to see how there could properly

---

kidnapping as a crime involving a significant prospect of violence). If the court had decided that kidnapping was inherently dangerous, *Matchett* would not have applied. See *Commonwealth* v. *Watson*, 388 Mass. 536, 543-544 (1983); *Commonwealth* v. *Currie*, 388 Mass. at 785; *Commonwealth* v. *Walker*, 17 Mass. App. Ct. at 198. Compare *Commonwealth* v. *Watkins*, 375 Mass. 472, 475-476, 485-488 (1978) (pre-*Matchett* case upholding felony-murder conviction where underlying crimes were robbery and kidnapping). Furthermore, there was strong evidence that the kidnapping in this case was effectuated in a manner inherently dangerous to human life. Consequently, had the Supreme Judicial Court not found that the direct proof of malice was overwhelming, and if it found that kidnapping is not an inherently dangerous crime in all cases, it nonetheless might well have found failure to give a *Matchett* instruction was harmless error in this case. Compare *Commonwealth* v. *Currie*, 388 Mass. at 785-786; *State* v. *Wallace*, 333 A.2d 72, 83 (Me. 1975) ("We see no reasonable possibility that the jury, if [properly] instructed would have found that the act of sodomy was not committed in a manner dangerous to human life").

[8] In its opinion (388 Mass. at 505 n.5), the court undertook to review the *Matchett* issue pursuant to § 33E "as appearing in St. 1979, c. 346 § 2." Although that statute restricted review under § 33E to cases in which the defendant was convicted of first degree murder, the Supreme Judicial Court had held that § 33E review of a second degree murder conviction was proper if the offense occurred before July 1, 1979, as did the offense in this case. *Commonwealth* v. *Davis*, 380 Mass. 1, 16 (1980).

[9] The Supreme Judicial Court reviewed this issue under G. L. c. 278, § 33E, stating it would apply the "miscarriage of justice standard of review

be a later finding that the defendant was deprived of an "available substantial ground of defense." Compare *Commonwealth* v. *Sylvester*, 400 Mass. at 341. If the claimed error did not create the risk of an erroneous result, the failure of counsel to object to that error at trial likewise could not have affected the result. Although the initial focus of the two inquiries is different — the judge's conduct of the trial when determining whether there was a miscarriage of justice and the behavior of counsel when determining whether the defendant had ineffective assistance — in this situation the two inquiries conclude with the same question: whether there was a substantial chance the jury would have acted differently had things gone as the defendant now claims they should have gone. Where an appellate court has already answered that question in the negative, a claim based upon the same issue but newly attired in the garb of ineffective assistance of counsel is duplicitous and amounts to mere "Monday morning quarterbacking."[10] See generally *Commonwealth* v. *Bernier,* 359 Mass. 13, 18-19 (1971); *Commonwealth* v. *McGann,* 20 Mass. App. Ct. 59, 61-62 (1985).

The defendant is not entitled to a new trial.

*Order denying motion for new trial affirmed.*

---

. . . to determine whether relief should be afforded for any 'reason that justice may require.'" 388 Mass. at 505 & n.5. This court has noted that the § 33E standard has been "variously expressed" and that such review is usually broader in scope than that afforded under the *Freeman* " 'substantial risk of a miscarriage of justice' " standard. *Commonwealth* v. *Miranda,* 22 Mass. App. Ct. 10, 15, 16 (1986). See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

[10] The defendant's present counsel conceded as much at the motion hearing: "I just want the [c]ourt to know I'm not trying to throw stones at either trial counsel or appellate counsel. But the fact is in my opinion in retrospect, and I admit it's Monday morning quarterbacking, it does appear there was some lapse here on counsel's part. . . ."